1

**PERKINS COIE LLP**
Sunita Bali (Bar No. 274108)
*SBali@perkinscoie.com*
505 Howard Street, Suite 1000
San Francisco, California 94105-3204
Telephone: +1.415.344.7000
Facsimile: +1.415.344.7050

2

3

4

5

6

Lauren J. Tsuji (Bar No. 300155)
*LTsuji@perkinscoie.com*
Anna Mouw Thompson *(Pro Hac Vice* Application Forthcoming*)*
*AnnaThompson@perkinscoie.com*
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

7

8

9

10

11

*Attorneys for Defendant GOOGLE LLC*

12

**UNITED STATES DISTRICT COURT**

13

**NORTHERN DISTRICT OF CALIFORNIA**

14

**SAN FRANCISCO DIVISION**

15

16

JOHN ROE and JANE ROE, on behalf of themselves and their minor child, M.C.,

17

Plaintiffs,

18

v.

19

GOOGLE LLC,

20

Defendant.

21

22

Case No. 3:25-cv-08927-AMO

**GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO STRIKE AND TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Date: May 14, 2026
Time: 2:00 p.m.
Location: 19th Floor, Courtroom 10
Judge: Hon. Araceli Martínez-Olguín

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 14, 2026, at 2:00 p.m., or as soon as the matter may be heard in the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, in Courtroom 10, 19th Floor, Defendant Google LLC ("Google"), by and through its counsel of record, will and hereby does move the Court for an order striking statements attributed to the general artificial intelligence model Plaintiffs refer to as "Google Gemini" ("Gemini") under Federal Rule of Civil Procedure 12(f) and dismissing Plaintiffs' Amended Complaint (Dkt. No. 11) ("FAC") under Rule 12(b)(6).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities herein, the accompanying Request for Judicial Notice, the Declaration of Sunita Bali and the exhibits attached thereto, the pleadings and papers on file in this action and any argument and evidence to be presented at the hearing on this Motion, and any other matters that may properly come before the Court.

### STATEMENT OF ISSUES

1. Whether statements attributed to Gemini should be stricken as immaterial, impertinent, and scandalous under Rule 12(f).

2. Whether Plaintiffs' state law claims (Counts 1–5, 7–8) are barred by Section 230 of the federal Communications Decency Act.

3. Whether Plaintiffs' common-law products-liability claims (Counts 1–5) fail because (a) Plaintiffs cannot allege the kind of physical harm to person or property required to state products-liability claims or (b) products-liability claims cannot arise from exposure to allegedly harmful content or ideas.

4. Whether the Plaintiffs' Fourteenth Amendment claim (Count 6) fails as a matter of law because (a) Google is not a state actor, (b) the FAC fails to allege a violation of the Fourteenth Amendment, or (c) any constitutional claim is time barred.

1        5.      Whether Plaintiffs' claim for violation of California's Unfair Competition Law

2  ("UCL") (Count 7) fails because (a) they are ineligible for its limited equitable relief or (b) they

3  have no viable claim on the merits.

4        6.      Whether Plaintiffs' claim for violation of California's Implied Warranty of Fitness

5  for a Particular Purpose (Count 8) fails because they (a) cannot overcome Google's contractual

6  disclaimer or (b) they fail to allege sufficient injury or privity to sustain this claim.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................ 1

II.   BACKGROUND ......................................................................................... 2

      A.    Google's Educational Products............................................................ 2

      B.    Plaintiffs' Factual Allegations............................................................. 3

      C.    Plaintiffs' Legal Claims ...................................................................... 4

III.  LEGAL STANDARD.................................................................................. 4

IV.   ARGUMENT ............................................................................................. 5

      A.    The "explanations" from Gemini should be stricken under Rule 12(f). .................... 5

      B.    Plaintiffs' state law claims (counts 1–5, 7–8) are barred by Section 230. .................. 6

            1.    Section 230(c)(1) precludes Plaintiffs' state law claims.................................... 7

            2.    Section 230(c)(2)(B) also precludes Plaintiffs' state-law claims...................... 10

      C.    M.C.'s common law products-liability claims (counts 1–5) are not legally
            viable under California law. ...................................................................... 11

            1.    Plaintiffs cannot allege the kind of physical harm to person or property
                  that California law requires for products-liability claims. ............................... 12

            2.    Product-liability claims cannot arise from exposure to allegedly harmful
                  content or ideas. .................................................................................. 15

      D.    The Parent Plaintiffs' Fourteenth Amendment claim (count 6) fails as a matter
            of law............................................................................................... 16

            1.    Google is not a state actor. ..................................................................... 16

            2.    There is no Fourteenth Amendment violation. .............................................. 18

            3.    Any constitutional claim is time barred. ..................................................... 18

      E.    Plaintiffs' UCL claim (count 7) fails because they are not entitled to equitable
            relief and have no viable claim on the merits. ............................................... 19

      F.    Plaintiffs' implied-warranty claim (count 8) cannot overcome Google's
            contractual disclaimer and fails to allege sufficient injury or privity. ..................... 22

            1.    Google disclaims all warranties, including implied warranties. .......................... 22

1

2.    Plaintiffs identify only non-recoverable emotional injury. ................................ 23

2

3.    Plaintiffs lack privity with Google. .................................................................... 23

3

V.    CONCLUSION ................................................................................................................ 23

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 3:25-CV-08927-AMO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) .............................................................................................. 23

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ...................................................................... 6, 7, 8, 9

*Belanus v. Clark*,
  796 F.3d 1021 (9th Cir. 2015) ................................................................................ 19

*Benedict v. Google LLC*,
  2024 WL 3427161 (D. Ariz. July 16, 2024) ............................................................ 8

*Bogard v. TikTok Inc.*,
  2025 WL 604972 (N.D. Cal. Feb. 24, 2025) ...................................................... 2, 15

*Calise v. Meta Platforms, Inc.*,
  103 F.4th 732 (9th Cir. 2024) ........................................................................... 6, 7, 8

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
  590 F.3d 806 (9th Cir. 2010) ............................................................................ 16, 18

*County of Santa Clara v. Atl. Richfield Co.*,
  137 Cal. App. 4th 292 (2006) ................................................................................. 12

*Cullen v. Netflix, Inc.*,
  880 F. Supp. 2d 1017 (N.D. Cal. 2012) .................................................................. 21

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) .................................................................................... 4

*Dawson v. E. Side Union High Sch. Dist.*,
  28 Cal. App. 4th 998 (1994) ..................................................................................... 1

*Divino Grp. LLC v. Google LLC*,
  2022 WL 4625076 (N.D. Cal. Sept. 30, 2022) ...................................................... 10

*Doe 1 v. Twitter, Inc.*,
  148 F.4th 635 (9th Cir. 2025) ................................................................................. 10

*Doe v. CVS Pharmacy, Inc.*,
  982 F.3d 1204 (9th Cir. 2020) ................................................................................ 21

*Doe v. Grindr Inc.*,
  128 F.4th 1148 (9th Cir. 2025) ........................................................................... 9, 10

*Doe v. MySpace, Inc.*,
   528 F.3d 413 (5th Cir. 2008) ........................................................................... 9, 10

*Doe v. United Air Lines, Inc.*,
   160 Cal. App. 4th 1500 (2008) .............................................................................. 14

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010) ................................................................................ 21

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ............................................................................. 7, 9

*Erlich v. Menezes*,
   21 Cal. 4th 543 (1999) ..................................................................................... 12, 23

*Est. of B.H. v. Netflix, Inc.*,
   2022 WL 551701 (N.D. Cal. Jan. 12, 2022) ......................................................... 15

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ................................................................................. 6

*Fakhrian v. Google Inc.*,
   2016 WL 1650705 (Cal. Ct. App. Apr. 25, 2016) .................................................. 8

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir.1993) .................................................................................. 5

*Fields v. Palmdale Sch. Dist.*,
   427 F.3d 1197 (9th Cir. 2005) ............................................................................... 18

*Friedman v. Merck & Co.*,
   107 Cal. App. 4th 454 (2003) ................................................................................ 13

*Getachew v. Google, Inc.*,
   491 F. App'x 923 (10th Cir. 2012) .......................................................................... 8

*Ginsberg v. Google Inc.*,
   586 F. Supp. 3d 998 (N.D. Cal. 2022) .................................................................. 10

*GMC Semitech Co. v. Cap. Asset Exch. and Trading, LLC*,
   2025 WL 1236677 (N.D. Cal. Apr. 29, 2025) ...................................................... 21

*Goddard v. Google, Inc.*,
   640 F. Supp. 2d 1193 (N.D. Cal. 2009) .................................................................. 8

*Google, LLC v. Equustek Sols., Inc.*,
   2017 WL 5000834 (N.D. Cal. Nov. 2, 2017) ................................................. 6, 7, 8

*Gorran v. Atkins Nutritionals, Inc.*,
 464 F. Supp. 2d 315 (S.D.N.Y. 2006) .......................................................... 15

*Green v. Am. Online (AOL)*,
 318 F.3d 465 (3d Cir. 2003) ........................................................................ 9

*Grisham v. Philip Morris U.S.A., Inc.*,
 40 Cal. 4th 623 (2007) ....................................................................... 12, 14

*Hernandez-Silva v. Instructure, Inc.*,
 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) ............................................... 17

*Herrick v. Grindr LLC*,
 765 F. App'x 586 (2d Cir. 2019) ................................................................ 9

*HomeAway.com, Inc. v. City of Santa Monica*,
 918 F.3d 676 (9th Cir. 2019) ...................................................................... 6

*Hubbard v. Google LLC*,
 2024 WL 3302066 (N.D. Cal. July 1, 2024) ............................................... 20

*In re Facebook*,
 625 S.W.3d 80 (Tex. 2021) ........................................................................ 10

*In re Google Phone Litig.*,
 2012 WL 3155571 (N.D. Cal. Aug. 2, 2012) ............................................... 22

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
 2025 WL 1892390 (N.D. Cal. July 8, 2025) ............................................... 14

*Intango, LTD v. Mozilla Corp.*,
 2020 WL 12584274 (N.D. Cal. Aug. 25, 2020) ............................................. 7

*James v. Meow Media, Inc.*,
 300 F.3d 683 (6th Cir. 2022) .................................................................... 15

*Jane Doe No. 1 v. Backpage.com, LLC*,
 817 F.3d 12 (1st Cir. 2016) ........................................................................ 9

*Jensen v. Lane County*,
 222 F.3d 570 (9th Cir. 2000) .................................................................... 17

*Jimenez v. Superior Ct.*,
 29 Cal. 4th 473 (2002) ............................................................................. 13

*Jones v. J.B. Lippincott Co.*,
 694 F. Supp. 1216 (D. Md. 1988) .............................................................. 15

*Kanter v. Warner-Lambert Co.*,
  99 Cal. App. 4th 780 (2002) ........................................................................ 14

*Kirtley v. Rainey*,
  326 F.3d 1088 (9th Cir. 2003) ..................................................................... 16

*Lawson v. Mgmt. Activities, Inc.*,
  69 Cal. App. 4th 652 (1999) ........................................................................ 14

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ....................................................................... 4

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
  925 F.3d 1263 (D.C. Cir. 2019) .................................................................... 8

*May v. Google LLC*,
  2024 WL 4681604 (N.D. Cal. Nov. 4, 2024) ............................................. 21

*Moales v. Land Rover Cherry Hill*,
  2025 WL 1249616 (D. Conn. Apr. 30, 2025) ............................................... 5

*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) ....................................................................... 4

*Moran v. Screening Pros, LLC*,
  943 F.3d 1175 (9th Cir. 2019) ..................................................................... 19

*O'Handley v. Weber*,
  62 F.4th 1145 (9th Cir. 2023) ...................................................................... 17

*O'Kroley v. Fastcase, Inc.*,
  831 F.3d 352 (6th Cir. 2016) ......................................................................... 8

*Pagan v. Google Corp.*,
  2016 WL 7187645 (D.N.H. Nov. 15, 2016) ................................................. 8

*Parents for Priv. v. Barr*,
  949 F.3d 1210 (9th Cir. 2020) ..................................................................... 18

*Parker v. Google, Inc.*,
  422 F. Supp. 2d 492 (E.D. Pa. 2006) ........................................................... 8

*Park-Kim v. Daikin Indus., Ltd.*,
  2016 WL 5958251 (C.D. Cal. Aug. 3, 2016) ............................................. 22

*Parks Sch. of Bus., Inc. v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) ....................................................................... 16

*PC Drivers Headquarters, LP v. Malwarebytes Inc.*,
   371 F. Supp. 3d 652 (N.D. Cal. 2019) ................................................................... 10

*Phillips v. Apple Inc.*,
   725 F. App'x 496 (9th Cir. 2018) ............................................................... 19, 20

*Potter v. Firestone Tire & Rubber Co.*,
   6 Cal. 4th 965 (1993) ........................................................................................ 13

*Prescott v. Abbott Lab'ys*,
   736 F. Supp. 3d 775 (N.D. Cal. 2024) ............................................................... 19

*Price v. Shell Oil Co.*,
   2 Cal. 3d 245 (1970) ........................................................................................ 13

*Q.J. v. PowerSchool Holdings, LLC*,
   2025 WL 2410472 (N.D. Ill. Aug. 20, 2025) ..................................................... 17

*Rattagan v. Uber Techs., Inc.*,
   17 Cal. 5th 1 (2024) ......................................................................................... 13

*Rawson v. Recovery Innovations, Inc.*,
   975 F.3d 742 (9th Cir. 2020) .............................................................................. 17

*Regino v. Staley*,
   133 F.4th 951 (9th Cir. 2025) ............................................................................. 18

*Reilly v. Apple Inc.*,
   578 F. Supp. 3d 1098 (N.D. Cal. 2022) ............................................................. 20

*Resh, Inc. v. Skimlite Mfg. Inc.*,
   666 F. Supp. 3d 1054 (N.D. Cal. 2023) ............................................................... 5

*Rothschild v. Pac. Co*s.,
   2025 WL 690388 (N.D. Cal. Mar. 4, 2025) ........................................................ 14

*San Miguel v. HP Inc.*,
   317 F. Supp. 3d 1075 (N.D. Cal. 2018) ............................................................. 21

*Sanders v. Acclaim Ent., Inc.*,
   188 F. Supp. 2d 1264 (D. Colo. 2002) ............................................................... 15

*Seaver v. Est. of Cazes*,
   2019 WL 2176316 (D. Utah May 20, 2019) ......................................................... 7

*Seely v. White Motor Co.*,
   63 Cal. 2d 9 (1965) .......................................................................................... 13

-vii-

*Shalabi v. City of Fontana,*
   11 Cal. 5th 842 (2021) ........................................................................... 18

*Sheahan v. State Farm Gen. Ins. Co.,*
   394 F. Supp. 3d 997 (N.D. Cal. 2019) ............................................... 1, 12

*Sinai v. Mitchell Books,*
   1993 WL 220260 (9th Cir. June 23, 1993) .......................................... 15

*Smith v. Intel Corp.,*
   2025 WL 2381617 (N.D. Cal. Aug. 15, 2025) ..................................... 20

*Snell v. United Specialty Ins. Co.,*
   102 F.4th 1208 (11th Cir. 2024) ............................................................ 6

*Sonner v. Premier Nutrition Corp.,*
   971 F.3d 834 (9th Cir. 2020) ................................................................ 20

*Stearns v. Select Comfort Retail Corp.,*
   763 F. Supp. 2d 1128 (N.D. Cal. 2010) .............................................. 20

*Sutton v. Providence St. Joseph Med. Ctr.,*
   192 F.3d 826 (9th Cir. 1999) ................................................................ 16

*Trishan Air, Inc. v. Dassault Falcon Jet Corp.,*
   2011 WL 13186258 (C.D. Cal. May 17, 2011) ................................... 15

*Velasco v. Paccar, Inc.,*
   2017 WL 11632279 (C.D. Cal. Mar. 17, 2017) ................................... 22

*Watkins v. MGA Ent., Inc.,*
   574 F. Supp. 3d 747 (N.D. Cal. 2021) ................................................ 23

*Williams v. Apple, Inc.,*
   449 F. Supp. 3d 892 (N.D. Cal. 2020) ................................................ 19

*Windham at Carmel Mountain Ranch Ass'n v. Superior Ct.,*
   109 Cal. App. 4th 1162 (2003) ............................................................ 23

*Winter v. G.P. Putnam's Sons,*
   938 F.2d 1033 (9th Cir. 1991) .............................................................. 15

*Zango, Inc. v. Kaspersky Lab, Inc.,*
   568 F.3d 1169 (9th Cir. 2009) ....................................................... 10, 11

**Statutes**

42 U.S.C. § 1983 ..................................................................................... passim

47 U.S.C. § 230 ....................................................................................... passim

Cal. Bus. & Prof. Code § 17200 ................................................................. 2

Cal. Com. Code § 2315 ............................................................................... 2

Cal. Educ. Code § 49073.1........................................................................ 16

**Rules**

Federal Rule of Civil Procedure 12........................................................ 4, 5

Federal Rule of Evidence 201 .................................................................... 4

**Other Authorities**

Ido Kilovaty, *Hacking Generative AI*, 58 Loy. L.A. L. Rev. 521 (2025) ....................................... 6

## I.    INTRODUCTION

K-12 schools across the United States use Chromebooks and Google's web-based educational tools to further students' education. This lawsuit is a misuse of California tort law in an attempt to undermine educators' decision to use Google's technology as part of their schools' curricula. Plaintiffs are parents (the "Parent Plaintiffs") suing on their own behalf and on behalf of their minor child ("M.C.") who received a Chromebook from his school for educational purposes. Plaintiffs allege that M.C. was exposed to, and became addicted to, pornography through this Chromebook and the internet access that it provided. They bring a slew of claims against Google, all of which seek to hold Google liable for the third-party content that M.C. encountered while using his school-issued Chromebook.

This Court should dismiss the FAC. Plaintiffs' claims contravene the general principle that "courts are not school boards or legislatures." *Dawson v. E. Side Union High Sch. Dist.*, 28 Cal. App. 4th 998, 1036 (1994) (cleaned up). Challenges to the "propriety of educational policies" should be "address[ed] to local school districts, to the Legislature, and ultimately to the people in whom the power to develop public educational policy properly resides." *Id.* The various claims also fail as a matter of law under well-established precedent.

*First*, Plaintiffs' state-law claims are barred by Section 230 of the federal Communications Decency Act. *See* 47 U.S.C. § 230(c)(1), (c)(2)(B). Plaintiffs' various common-law and statutory claims all rest on the theory that Google had a duty to limit M.C.'s access to the internet to prevent him from encountering harmful content. Such claims—which seek to impose tort liability on Google for online content generated by third parties—fall within the heartland of CDA immunity.

*Second*, the common-law products-liability theories, brought on M.C.'s behalf, contradict longstanding principles of California tort law. As a threshold matter, under California law, "the plaintiff in a products liability action is limited to recovering damages for . . . physical injuries." *Sheahan v. State Farm Gen. Ins. Co.*, 394 F. Supp. 3d 997, 1008 (N.D. Cal. 2019) (cleaned up). That principle precludes M.C.'s claims, as he is "not claiming physical injuries," *id.*, but instead alleges an addiction to pornography resulting in emotional harms and mental distress.

1    Additionally, these claims are all ultimately grounded in the assertion that Google should be

2    liable for M.C.'s exposure to content and communications on the internet. And "products liability

3    claims cannot be based" on "a disagreement about ideas, content, and free expression[.]" *Bogard*

4    *v. TikTok Inc.*, 2025 WL 604972, at *7 (N.D. Cal. Feb. 24, 2025) (cleaned up).

5        *Third*, the Fourteenth Amendment claim brought by the Parent Plaintiffs is meritless and

6    untimely. Google did not engage in the kind of governmental action that is required for such a

7    claim under 42 U.S.C. § 1983. There is no substantive due process right to control what

8    technology school officials choose to incorporate into a public school curriculum. And, even if

9    there were, the Parent Plaintiffs' claim is time-barred.

10       *Fourth*, Plaintiffs' claims for violation of California's Unfair Competition Law ("UCL"),

11   Cal. Bus. & Prof. Code § 17200, and California's Implied Warranty of Fitness for a Particular

12   Purpose, Cal. Com. Code § 2315, fail for multiple reasons. Plaintiffs are not entitled to equitable

13   relief available under the UCL because they lack standing to pursue an injunction and the

14   availability of remedies at law precludes any request for restitution. Plaintiffs' implied-warranty

15   claim fails because the contractual disclaimer in Google's Terms of Service bars their claim, they

16   cannot recover for purely emotional injuries, and they lack the requisite privity with Google.

17   For these reasons, Google respectfully asks the Court to dismiss the FAC.

18                                    **II.    BACKGROUND**

19   **A.    Google's Educational Products**

20       Google offers a suite of education products and services that can be used by schools and

21   school districts to facilitate teaching, learning, and classroom collaboration, referred to as Google

22   Workspace for Education ("GWFE"). *See* FAC ¶ 5. Many schools also provide students with

23   Chromebooks, which are laptops manufactured by third parties that run Google's Chrome

24   operating system ("Chrome OS"), and which—like any laptop—can be used to access Google's

25   Chrome browser ("Chrome"), Google Search ("Search"), and GWFE (collectively, the

26   "Products"). *Id*. ¶¶ 5, 55–56. School administrators also have access to the Admin Console, which

27   is a web-based platform that allows them to manage GWFE services and devices (including

28

Chromebooks) for all users in their organization, including through customizable settings that, among other things, can be used to restrict access to certain websites. *Id.* ¶¶ 10, 101.

**B.    Plaintiffs' Factual Allegations**

Plaintiffs allege in 2020, while M.C. was in sixth grade, his public school provided him with a Chromebook equipped with ChromeOS, Chrome, and GWFE, which could be used to access the internet. *See* FAC ¶¶ 189–190. M.C. allegedly used his Chromebook to access harmful online content, including pornography, and later developed an addiction to such material. *See id.* ¶16. Upon discovering this, M.C.'s parents "immediately alerted school personnel," *id.* ¶ 19, but were unable to prevent M.C. from "devising workarounds to administrative restrictions" applied by the school, such as by "posing as an adult" to "create a new Google account on his school-issued Chromebook," *id.* ¶¶ 67, 201. His parents ultimately withdrew him from public school and "enroll[ed] him in a charter school that sharply limits students' use of digital technologies." *Id.* ¶ 211.

Plaintiffs blame Google for M.C.'s addiction to pornography. First, Plaintiffs fault Google because its Products "grant students virtually unrestricted access to the internet," which contains content that is unsafe for children. *Id.* ¶ 7. According to Plaintiffs, Google should "fully restrict internet access by default, then provide administrator tools for gradually unrestricting access," *id.* ¶ 119, and "design[] tools that enable parents—especially parents of young students—to monitor and restrict their children's internet access by default," *id.* ¶ 140.

Second, Plaintiffs claim that Google's search algorithms "push students toward" "harmful content, such as pornography, violence, and predatory communication . . . using detailed information Google has collected about them while they use its Products." *Id.* ¶ 51. They claim that M.C. first encountered pornography when he was searching the internet for information about Pokemon characters and, "with each click, Google's algorithms pushed him toward increasingly sexualized content . . . which ultimately led to pornographic content[.]" *Id.* ¶ 196. The FAC asserts—based on nothing but speculation and purported "explanations" provided by Gemini (Google's AI assistant)—that this occurred *because* M.C. was "an 11-year-old boy" and the "psychographic profile Google generated about M.C. using his data likely suggested that this type

of content would be 'highly engaging' to M.C." *Id.* ¶ 197; *see also, e.g.*, *id.* ¶¶ 78, 83. Not only is Plaintiffs' theory unsupported, it is directly contradicted by Google's own statements on its website, which are incorporated by reference into the FAC and subject to judicial notice under Federal Rule of Evidence 201(b). *See, e.g.*, Bali Decl. Ex. A, at 4 (explaining GWFE's "[a]ge-based content" controls and stating that "[d]efault settings in Google Search and YouTube limit content that might be inappropriate for students under the age of 18, with flexibility for admins to adjust settings as needed"); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (explaining that courts "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint").

## C.    Plaintiffs' Legal Claims

Plaintiffs' FAC asserts eight claims against Google. The first five are various product liability claims brought on behalf of M.C.: (1) strict liability - design defect, (2) strict liability - failure to warn, (3) negligence - design, (4) negligence - failure to warn, and (5) negligence. The next claim is brought on behalf of the Parent Plaintiffs: (6) 42 U.S.C. § 1983 – Fourteenth Amendment (Parent Plaintiffs). The final two statutory claims are brought on behalf of all Plaintiffs: (7) violation of the UCL, and (8) violation of California's Implied Warranty of Fitness for a Particular Purpose.

## III.    LEGAL STANDARD

Rule 12(f) gives the Court discretion to strike "any redundant, immaterial, impertinent, or scandalous matter" from a complaint. Rule 12(b)(6) dismissal is warranted where "there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (cleaned up). The Court need not accept conclusory allegations, allegations contradicted by materials incorporated by the complaint or matters properly subject to judicial notice, unwarranted deductions of fact, or unreasonable inferences. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

# IV.    ARGUMENT

Plaintiffs' claims are foreclosed by clearly established law. Perhaps because they are aware of their lack of legally viable claims, Plaintiffs have filled their FAC with incendiary assertions, such as the obvious speculation that Google's algorithm recommended pornographic content to M.C. *because* he was an 11-year-old boy. *See* FAC ¶¶ 197, 304, 350, 375, 440. Plaintiffs have also violated this Court's standing order on AI-generated submissions by inserting numerous purported "explanations" from Gemini. *See, e.g.*, *id*. ¶¶ 78, 83 (relying on Gemini to support allegations regarding algorithms, inappropriate content, and the teenage brain). Google moves to strike these "explanations" under Rule 12(f), but regardless of whether these improper allegations are struck, Plaintiffs' claims all fail as a matter of law.

## A.    The "explanations" from Gemini should be stricken under Rule 12(f).

The 469-paragraph FAC is laden with statements attributed to Gemini—a general artificial intelligence model. *See* FAC ¶ 70 & n.8. Plaintiffs rely *solely* on these statements as the basis for their (false) allegation that Google intentionally recommended pornographic content to M.C. because he was "an 11-year-old boy" who would find this type of content "highly engaging." *Id.* ¶ 197; *see also id.* ¶¶ 78, 83, 95–96. Google asks the Court to strike these and related statements[1] as "immaterial," "impertinent," and scandalous under Rule 12(f).

Supposed statements from a general artificial intelligence model have "no essential or important relationship to the claim for relief or the defenses being pleaded" and do "not pertain, and [are] not necessary, to the issues in question." *Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054, 1058 (N.D. Cal. 2023) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). When it comes to generative artificial intelligence, litigants must undertake "independent verification [in order] to represent to the Court that the information in their filings is truthful." *Moales v. Land Rover Cherry Hill*, 2025 WL 1249616, at *3 (D. Conn. Apr. 30, 2025); *see also* ABA Comm. on Ethics & Pro. Resp., Formal Op. 512 (July 29, 2024). Indeed, because generative artificial intelligence models are "inherently

---

[1] Specifically, FAC ¶¶ 70 & n.8, 75, 76 & n.9, 78, 80–83, 88, 95–96, 120, 126, 129, 138, 150–151, 154 & n.19, 183, 185–186.

1   vulnerable to manipulation," Ido Kilovaty, *Hacking Generative AI*, 58 Loy. L.A. L. Rev. 521, 525

2   (2025), there is a "risk that lawyers . . . might try to use LLMs [large language models]

3   strategically to reverse-engineer a preferred answer." *Snell v. United Specialty Ins. Co.*, 102 F.4th

4   1208, 1231 (11th Cir. 2024) (Newsom, J., concurring). All of these issues are precisely why

5   Section H(4) of this Court's Standing Order requires that "[a]ny submission containing AI-

6   generated content must include a certification that lead trial counsel has personally verified the

7   content's accuracy." Plaintiffs have not complied with this requirement, and their allegations

8   should be stricken for this reason, as well.

9   **B.    Plaintiffs' state law claims (counts 1–5, 7–8) are barred by Section 230.**

10          Congress enacted Section 230 to "promote the free exchange of information and ideas

11  over the Internet," and to "protect[] certain internet-based actors from certain kinds of lawsuits."

12  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009) (citation modified). Section 230 was

13  thus designed to "help the internet grow" and to "encourage internet companies to monitor and

14  remove offensive conduct without fear that they would . . . become liable for . . . messages that

15  they didn't edit or delete[.]" *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 739 (9th Cir. 2024)

16  (cleaned up). Section 230 addresses "the threat that tort-based lawsuits pose[d] to freedom of

17  speech," *Google, LLC v. Equustek Sols., Inc.*, 2017 WL 5000834, at *2 (N.D. Cal. Nov. 2, 2017),

18  through two related provisions: Section 230(c)(1) protects online platforms from being treated as

19  a "publisher or speaker" of third-party content, while Section 230(c)(2) separately immunizes

20  online platforms from claims based on decisions related to blocking and screening of

21  objectionable content, or for providing others with the technical means to do so. Section 230

22  "explicitly preempts inconsistent state laws." *HomeAway.com, Inc. v. City of Santa Monica*, 918

23  F.3d 676, 681 (9th Cir. 2019); *see also* 47 U.S.C. § 230(e)(3). In "close cases," Section 230 issues

24  "must be resolved in favor of immunity," as the statute protects providers from "having to fight

25  costly and protracted legal battles," not just from ultimate liability. *Fair Hous. Council of San*

26  *Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174–75 (9th Cir. 2008).

27

28

1    **1.    Section 230(c)(1) precludes Plaintiffs' state law claims.**

2    Section 230(c)(1) says that "[n]o provider or user of an interactive computer service shall

3    be treated as the publisher or speaker of any information provided by another information content

4    provider." This provision's "three-prong test" protects "(1) a provider or user of an interactive

5    computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a

6    publisher or speaker (3) of information provided by another information content provider." *Dyroff*

7    *v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). Each element is satisfied.

8    **Interactive Computer Services Provider**: Plaintiffs concede that Google provides a

9    "service or system that provides access to the Internet." 47 U.S.C. § 230(f)(2). Browsers like

10    Chrome are "unquestionably an interactive computer service and not an information content

11    provider" within the meaning of Section 230. *Intango, LTD v. Mozilla Corp.*, 2020 WL

12    12584274, at *3 (N.D. Cal. Aug. 25, 2020); *see also, e.g.*, *Seaver v. Est. of Cazes*, 2019 WL

13    2176316, at *3 (D. Utah May 20, 2019) (holding that browser "fits this definition squarely

14    because it enables computer access by multiple users to computer servers"). Indeed, the crux of

15    Plaintiffs' theory is that Google's Products enable unrestricted access to the internet. *See, e.g.*,

16    FAC ¶¶ 7, 11, 28. There is therefore "no question" that Google satisfies this requirement.

17    *Equustek Sols.*, 2017 WL 5000834, at *2 (collecting cases).

18    **Treatment as Publisher or Speaker**: Protection under Section 230(c)(1) does not depend

19    on how plaintiffs plead their claims, but instead turns on the ultimate "theory of liability." *Calise*,

20    103 F.4th at 740 (cleaned up). The question is "whether the cause of action inherently requires the

21    court to treat the defendant as the publisher or speaker of content provided by another." *Barnes*,

22    570 F.3d at 1102.

23    Here, Plaintiffs allege that Google Search is a defective product because it "promotes

24    harmful content," and should be redesigned "to not promote maximally engaging content[.]" FAC

25    ¶¶ 11–12. Specifically, they claim that "Google's search algorithms pushed M.C. toward

26    increasingly sexual content" such as "pornographic anime," which was created by third-parties

27    and published via Google Search. *Id.* ¶¶ 18, 196. And they demand that Google redesign its

28    search algorithm to limit what third-party content is published in response to "benign search

-7-

queries." *Id.* ¶ 29. These claims unquestionably treat Google as the publisher of allegedly harmful

content provided by another and are therefore barred by Section 230. *See, e.g.*, *Barnes*, 570 F.3d

at 1101–02; *Equustek Sols., Inc.*, 2017 WL 5000834, at *3 ("When a user queries Google's search

engine, Google responds with links to relevant websites and short snippets of their contents.

Google's search engine helps users discover and access content on third-party websites, but it

does not 'provide' that content within the meaning of Section 230." (citation modified));

*Getachew v. Google, Inc.*, 491 F. App'x 923, 926 (10th Cir. 2012) ("Google cannot be held liable

for search results that yield content created by a third party.").[2]

Nor can Plaintiffs seek damages for Google's alleged failure to remove or restrict access

to certain search results. "[T]he action of removing or screening content 'is quintessentially that

of a publisher,' and [thus] 'to impose liability on the basis of such conduct necessarily involves

treating the liable party as a publisher of the content it failed to remove.'" *Goddard v. Google,*

*Inc.*, 640 F. Supp. 2d 1193, 1200 (N.D. Cal. 2009) (quoting *Barnes*, 570 F.3d at 1103). Even if

the content at issue were "unlawful," that would not be "enough" to impose liability on Google

for failing to remove it. *Marshall's Locksmith Serv.*, 925 F.3d at 1269.

Plaintiffs may argue that they are not attempting to treat Google as a "publisher or

speaker," and are instead alleging that Google's Products are defective because they "offer

students virtually unrestricted access to the open internet," FAC ¶ 10–11, or that Google should

have "prevent[ed]," *id.* ¶ 29 or "limit[ed]," *id.* ¶¶ 86, 120, 125, access to harmful content posted

by "*other users*," *id.* ¶ 21 (emphasis added). In other words, Plaintiffs' "theory of liability,"

*Calise*, 103 F.4th at 740, is that Google is "responsible" for M.C.'s exposure to harmful online

content because "Google could and should design its Products in a way that prevents children like

---

[2] *See also, e.g.*, *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1268–1269
(D.C. Cir. 2019) (Google immune under Section 230 where complaint alleged re-publication of
content from the scam locksmiths' websites); *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th
Cir. 2016) (same where Google "merely provid[ed] access to . . . the allegedly defamatory text");
*Benedict v. Google LLC*, 2024 WL 3427161, at *1, *5 (D. Ariz. July 16, 2024) (similar); *Pagan v.*
*Google Corp.*, 2016 WL 7187645, at *1–2 (D.N.H. Nov. 15, 2016) (similar), *report and*
*recommendation adopted*, 2016 WL 7187312 (D.N.H. Dec. 8, 2016); *Parker v. Google, Inc.*, 422
F. Supp. 2d 492, 500–01 (E.D. Pa. 2006) (similar); *Fakhrian v. Google Inc.*, 2016 WL 1650705,
at *4 (Cal. Ct. App. Apr. 25, 2016) (unpublished) (similar).

M.C. from being exposed to online pornography" and similar content. FAC ¶ 29. That theory is likewise barred by Section 230.

Courts consistently recognize that claims seeking to hold defendants liable for failing to protect plaintiffs from third-party communications, at their core, treat the defendants as the publisher or speaker of third-party content. For example, the Ninth Circuit dismissed products-liability and negligence claims against the dating app Grindr where "[t]he theory underpinning [the] claims . . . fault[ed] Grindr for facilitating communication among users for illegal activity, including the exchange of child sexual abuse material." *Doe v. Grindr Inc.*, 128 F.4th 1148, 1152–53 (9th Cir. 2025), *cert. denied*, 2025 WL 2906619 (U.S. Oct. 14, 2025); *see also Dyroff*, 934 F.3d at 1097 (dismissing claims against a website that facilitated anonymous interactions with a drug dealer).[3]

It does not matter that Plaintiffs also claim Google should have "limit[ed]" M.C.'s internet access rather than outright blocked it. FAC ¶¶ 86, 120, 125. Those claims equally ask Google to "police its network," *Green*, 318 F.3d at 470, and this theory, too, impermissibly seeks to hold Google liable for quintessential publisher activity, which includes "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102; *see also, e.g.*, *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016) (dismissing claims based on purported lack of safety features, because "choices about what content can appear on the website and in what form" are "editorial choices that fall within the purview of traditional publisher functions"); *Herrick v. Grindr LLC*, 765 F. App'x 586, 590 (2d Cir. 2019) (Section 230(c)(1) precluded liability for "alleged lack of safety features" where safety features were only relevant to monitor or suppress third-party content). Alleging a "failure to implement basic safety measures" is "merely another way" of seeking liability for "publishing."

---

[3] Other federal circuits have reached the same result. *See Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (plaintiff treated the defendant as a publisher by alleging a "failure to implement measures that would have prevented [the victim] from communicating with" a third party through a social medial platform); *Green v. Am. Online (AOL)*, 318 F.3d 465, 470–71 (3d Cir. 2003) (same where plaintiff alleged defendant failed to "properly police its network for content transmitted by its users").

*MySpace*, 528 F.3d at 419–20. Section 230 thus bars "claims alleging that defectively designed internet products allowed for transmission of harmful third-party communications." *In re Facebook*, 625 S.W.3d 80, 94 (Tex. 2021).

Ultimately, there is no way to hold Google liable for the harms that M.C. allegedly suffered without effectively requiring Google to "monitor[ ] or publish[ ] third-party content" in a specific way. *Grindr*, 128 F.4th at 1153. That is precisely what Section 230 seeks to avoid. Plaintiffs' claims cannot proceed absent an allegation of harmful online content *created by Google* that was "independent of [Google's] role in monitoring or publishing third-party content." *Grindr*, 128 F.4th at 1153; *accord Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 645 (9th Cir. 2025). There is no such allegation here.

**Third-Party Content**: Plaintiffs allege that the cause of M.C.'s alleged harm was "harmful content" and "harmful communications" he accessed on third party websites. FAC ¶ 7. They do not allege that Google created the content itself, so the third requirement for Section 230(c)(1) is easily satisfied, as well. *See Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1006 (N.D. Cal. 2022) (finding this element satisfied where "[i]t is clear . . . that the Telegram app was created by a third party, and that the alleged hate speech posted on Telegram also was created by third parties").

### 2.    Section 230(c)(2)(B) also precludes Plaintiffs' state-law claims.

Section 230(c)(2)(B) protects from liability "any action taken to enable or make available . . . the technical means to restrict access to" harmful content. 47 U.S.C. § 230(c)(2)(B). The conduct protected by the provision includes providing software tools that "filter, screen, allow, or disallow content that the provider *or user* considers . . . objectionable[.]" *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1173 (9th Cir. 2009) (emphasis added) (quoting 47 U.S.C. § 230(f)(4)(A)). Courts therefore routinely dismiss claims against interactive service providers like Google based on the provision of technical tools intended to restrict access to the internet— including claims that those tools misclassify harmful content or filter out the wrong material. *See, e.g.*, *PC Drivers Headquarters, LP v. Malwarebytes Inc.*, 371 F. Supp. 3d 652, 660 (N.D. Cal. 2019) (applying immunity to claims based on wrongful filtering through software); *Divino Grp. LLC v. Google LLC*, 2022 WL 4625076, at *17–18 (N.D. Cal. Sept. 30, 2022) (holding that

Section 230(c)(2)(B) barred claims that Google made plaintiffs' videos inaccessible through "Restricted Mode" content filtering tool on YouTube, and noting that "creation of a 'Restricted Mode' to allow sensitive users to voluntarily choose a more limited experience of the YouTube service . . . fits within [S]ection 230(c)(2)(B)'s immunity"); *Zango*, 568 F.3d at 1175 (holding that Section 230(c)(2)(B) immunized company that provided malware blocking software to users because it "provid[ed] the technical means for others to restrict access to material [plaintiff] finds objectionable").

Here, Plaintiffs allege that Google provided M.C.'s school with access to the Admin Console, which offers various customizable settings that school administrators can use to filter out or restrict access to online content by students and others in their domain. *See* FAC ¶¶ 10, 101. Plaintiffs claim that these tools are "inadequate and overwhelming," that they should have been designed differently or had different default settings, and that this inadequacy contributed to M.C.'s alleged harm. *Id.* ¶ 10. These claims, too, are categorically immunized by Section 230(c)(2)(B).

## C.   M.C.'s common law products-liability claims (counts 1–5) are not legally viable under California law.

Plaintiffs' causes of action raising various products liability theories against Google all boil down to the assertion that Google's Products are defective because they did not include design features or warnings to prevent M.C. from accessing the internet. *See, e.g.*, FAC ¶¶ 303–306, 309–310, 312, 320–322. Plaintiffs allege that M.C. suffered psychological or emotional harm when he was exposed to objectionable content online. *See* FAC ¶¶ 16–29, 206, 213–214. But they do not identify *any* physical harm that M.C. or his parents allegedly suffered.

The basic theory underlying all of Plaintiffs' products-liability claims violates two longstanding limits on California's products-liability doctrine. *First*, products-liability claims must be grounded in physical harm to the plaintiff's person or property. Plaintiffs do not and cannot allege such harm here. *Second*, even if Plaintiffs could allege some kind of physical harm, their claims would still ultimately be grounded in an assertion that M.C. was wrongly allowed to

access harmful content on the internet. And courts have long refused to allow products-liability claims to be based on expressive content or ideas.

1.    **Plaintiffs cannot allege the kind of physical harm to person or property that California law requires for products-liability claims.**

Under California law, "a products liability action may be brought only by one who has already suffered a physical injury to his or her person of property, and the plaintiff in a products liability action is limited to recovering damages for such physical injuries." *Sheahan*, 394 F. Supp. 3d at 1008 (quoting *County of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 310 (2006)). Yet Counts 1–5 allege no such physical injury. Instead, they seek to hold Google liable for M.C.'s addiction to pornography, FAC ¶¶ 16, 22, 213–214, along with resulting emotional harms, *id.* ¶¶ 318, 340, and the economic losses Plaintiffs have incurred because of his addiction, *id.* ¶¶ 212–213. Those are not viable bases for recovery under longstanding, controlling precedent.

To start, Plaintiffs cannot claim M.C.'s addiction as an injury. The California Supreme Court has stressed that "[t]he addictiveness of a product is distinct from its capacity to cause serious physical injury[.]" *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 643 (2007). The *Grisham* court concluded—in the products-liability context—that addiction itself is not an "appreciable physical injury," and expressly rejected the notion that "addiction itself was actionable[.]" *Id.* at 641 n.11. Accordingly, Plaintiffs cannot ground their claim on the allegation that M.C.'s addiction is an actionable injury. *See* FAC ¶¶ 213–214.

Plaintiffs also cannot base their products-liability claims on alleged emotional distress resulting from M.C.'s exposure to pornography. *Id.* ¶¶ 318, 340. The California Supreme Court has repeatedly emphasized the "stringent limits" on recovery "for emotional distress[.]" *Erlich v. Menezes*, 21 Cal. 4th 543, 555 (1999). The longstanding rule is "that 'unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by breach of the independent duty. Even

then, with rare exceptions, a breach of the duty must threaten physical injury[.]" *Id.* (cleaned up) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993)). Plaintiffs have not alleged—and cannot allege—that Google assumed a "duty to plaintiff in which the emotional condition of the plaintiff is an object." *Potter*, 6 Cal. 4th at 985. In marketing the Products, Google's "undertaking was not of a personal nature involving an unavoidable risk of *serious* emotional trauma." *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 475 (2003) (distinguishing cases involving childbirth, psychiatric care, and mortuary services). No exception to the physical-injury prerequisite applies.

Adhering to the physical-injury requirement is compelled by two principles. The first stems from "the nature of the responsibility a manufacturer must undertake in distributing his products." *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 22 (2024) (cleaned up); *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965) (first identifying "the nature of the [manufacturer's] responsibility" as the justification for why "a manufacturer's liability is limited to damages for physical injuries"); *Price v. Shell Oil Co.*, 2 Cal. 3d 245, 252–54 (1970) (reaffirming principle); *Jimenez v. Superior Ct.*, 29 Cal. 4th 473, 482 (2002) (same). That "responsibility," the California Supreme Court has reasoned, "require[es] goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm," and the relevant "risks" involve "the risk of physical injury" from the product. *Seely*, 63 Cal. 2d at 18. And "the nature of this responsibility" is why "recovery under the doctrine of strict liability is limited solely to physical harm to person or property." *Jimenez*, 29 Cal. 4th at 482 (citation modified). The California Supreme Court has never suggested that manufacturers or sellers are responsible for the emotional responses that consumers might have when using a product, or for other non-physical risks that might come from using a product. The second principle recognizes that the "tremendous societal cost of otherwise allowing emotional distress compensation to a potentially unrestricted plaintiff class" requires "imposing some limit" on claims for emotional harms. *Potter*, 6 Cal. 4th at 991. There must be "meaningful restrictions" placed on plaintiffs' ability to recover for emotional distress or economic loss absent any actual physical harm, or else "the burden of payment of awards . . . will inevitably be borne by the public generally[.]" *Id.*

1    Plaintiffs may try to avoid dismissal by pointing to a handful of conclusory allegations

2    asserting that they suffered "physical . . . injuries." FAC ¶¶ 318, 340, 456. But "injury to the

3    plaintiff from a defective product is an essential element of a [products-liability] cause of action."

4    *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 790 (2002). The FAC's threadbare recitals

5    are "too conclusory to effectively allege physical harm." *In re Uber Techs., Inc., Passenger*

6    *Sexual Assault Litig.*, 2025 WL 1892390, at *18 (N.D. Cal. July 8, 2025); *see also Rothschild v.*

7    *Pac. Co*s., 2025 WL 690388, at *8 n.6 (N.D. Cal. Mar. 4, 2025) (same).

8    Plaintiffs may also try to argue that they can establish physical injury based on their

9    allegation that M.C. "compulsively accessing th[e] dopamine-inducing content" resulted in "long-

10   term alterations to his brain." FAC ¶ 197. But such an argument cannot be squared with

11   *Grisham*'s holding that a product being "addictive"—even when it "create[es] significant physical

12   and psychological dependence"—is not the kind of "serious physical injury" required for a

13   products-liability claim. 40 Cal. 4th at 643–44. Similarly, California precedent refuses to let

14   plaintiffs claim "a 'physical' effect" based on "how the *brain interprets* certain stimuli," such as

15   pornographic images. *Lawson v. Mgmt. Activities, Inc.*, 69 Cal. App. 4th 652, 665 (1999).

16   Otherwise, nearly "every stimulus generating an emotional effect" could be characterized as

17   causing "a 'physical' injury," which would "swallow[] up any distinction between . . . emotional

18   distress . . . and . . . 'hard' or *palpable* damages." *Id.* And erasing the doctrinal line between

19   physical and emotional injury "would clog the courts and make transportation and commerce

20   impossible." *Id.* at 661. California courts have thus consistently held the line between emotional

21   and physical harm. *See, e.g.*, *id.*; *Doe v. United Air Lines, Inc.*, 160 Cal. App. 4th 1500, 1512,

22   (2008) (holding that "alterations in an individual's body and behavior intrinsically or

23   characteristically associated with mental distress do not constitute bodily injury under the

24   Warsaw Convention," including "alterations or changes in an individual's brain and nervous

25   system characteristically tied to PTSD").

26

27

28

1

2

**2.    Product-liability claims cannot arise from exposure to allegedly harmful content or ideas.**

3

4

5

6

7

8

9

10

11

12

13

Plaintiffs assert that Google's Products are defective because they granted M.C. "virtually unrestricted access to the internet, where . . . students are likely to be exposed to harmful content . . . and harmful communications[.]" FAC ¶ 7. But it is black letter law that exposure to allegedly dangerous "ideas and expression" cannot support products-liability claims: "Products liability law is geared to the tangible world." *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991) (dismissing product-liability claim regarding reference book that contained allegedly dangerous misinformation about mushrooms). Courts in California and across the country have rejected claims like Plaintiffs' asserting that "harmful content" or "harmful communications" were dangerous products. *See, e.g.*, *Sinai v. Mitchell Books*, 1993 WL 220260, at *1 (9th Cir. June 23, 1993) (unpublished) (dismissing product-liability claim targeting allegedly inaccurate books about automobile emissions).[4]

14

15

16

17

18

19

20

Simply put, products-liability claims "cannot be based" on a "disagreement about ideas, content, and free expression." *Bogard*, 2025 WL 604972, at *7 (cleaned up). Any other rule would "inhibit those who wish to share thoughts and theories, for no author would write on a topic that could potentially result in physical injury to the reader." *Gorran*, 464 F. Supp. 2d at 325. Here, the gravamen of Plaintiffs' product-liability claims is that Google's Products injured M.C. by facilitating his access to harmful online content. *See, e.g.*, FAC ¶¶ 16–18, 21, 23, 52, 195, 202, 204, 206. Those claims must, therefore, be dismissed.

21

22

23

24

25

26

27

28

---

[4] *See also, e.g.*, *Est. of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) (dismissing claim based on movie that allegedly inspired a teen's suicide because the product-liability claim was "premised on the content and dissemination of the show"), *aff'd sub nom. Est. of Herndon v. Netflix, Inc.*, 2024 WL 808797 (9th Cir. Feb. 27, 2024), *cert. granted*, *vacated on other grounds*, 145 S. Ct. 1165 (2025); *Trishan Air, Inc. v. Dassault Falcon Jet Corp.*, 2011 WL 13186258, at *2 (C.D. Cal. May 17, 2011) (aeronautical training manuals); *James v. Meow Media, Inc.*, 300 F.3d 683, 699–701 (6th Cir. 2022) (violent movies, video games, and websites that allegedly inspired a school shooter); *Sanders v. Acclaim Ent., Inc.*, 188 F. Supp. 2d 1264, 1277–79 (D. Colo. 2002) (same); *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 324–25 (S.D.N.Y. 2006) (diet book); *Jones v. J.B. Lippincott Co.*, 694 F. Supp. 1216, 1216–17 (D. Md. 1988) (nursing textbook).

**D.      The Parent Plaintiffs' Fourteenth Amendment claim (count 6) fails as a matter of law.**

Plaintiffs assert a claim under 42 U.S.C. § 1983, alleging that Google violated the Plaintiff Parents' substantive due process rights under the Fourteenth Amendment. *See* FAC ¶¶ 424–446. This claim fails because Google's alleged conduct did not involve the governmental action necessary to bring a constitutional claim, and because there is no substantive due process right regarding what technology a public school chooses to incorporate into its curriculum.

**1.      Google is not a state actor.**

Plaintiffs asserting a Section 1983 claim must demonstrate that a governmental action violated their constitutional rights. Google is a private entity, so the Parent Plaintiffs must overcome the "presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). They cannot do so under any of the recognized tests for government action.

***Public Function Test***. The Parent Plaintiffs first invoke the public function test, asserting that Google "has been authorized" to perform the public function of "collection and maintenance of student information and provision of administrative and pedagogical tools and services." FAC ¶ 429. But collecting and storing education records, and providing digital tools to school administrators and teachers, are not "traditionally and exclusively governmental." *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003); *see also, e.g.*, *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 816 (9th Cir. 2010) ("[E]ducational services [are] not a function that is traditionally and exclusively the prerogative of the state . . . ."). To the contrary, California law expressly gives public educational agencies discretion to retain private organizations to "provide services, including cloud-based services, for the digital storage, management, and retrieval of pupil records" and to "provide digital educational software that authorizes a third-party provider of digital educational software to access, store, and use pupil records[.]" Cal. Educ. Code § 49073.1(a); *see also Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995) (public function test unmet where statute directed that "either the state or a private institution . . . may guarantee students loans"). Indeed, two courts have recently recognized as much when

-16-

1   dismissing similar Section 1983 claims against educational technology providers. *See Q.J. v.*
2   *PowerSchool Holdings, LLC*, 2025 WL 2410472, at *8 (N.D. Ill. Aug. 20, 2025) ("[T]he
3   Supreme Court has explained that providing education to high school students generally does not
4   qualify as an 'exclusive' public function, and it follows that the element of that function at issue
5   here—handling their data—is likewise not an exclusive public function."); *Hernandez-Silva v.*
6   *Instructure, Inc.*, 2025 WL 2233210, at *4 (C.D. Cal. Aug. 4, 2025) (similar), *appeal filed*, No.
7   25-5438 (9th Cir. Aug. 27, 2025).

8          ***Close Nexus/Joint Action Tests***. The Parent Plaintiffs also assert that "Google is jointly
9   engaged with state officials in the violative conduct," and that Google "is so entwined with the
10  District's policies that it may fairly be treated as that of the District itself." FAC ¶ 431. Plaintiffs
11  appear to invoke the "close nexus" and "joint action" tests. Those tests, which courts often
12  consider together, require a "sufficiently close nexus between the State and the challenged action
13  of the [defendant] so that the action of the latter may be fairly treated as that of the State itself" or
14  that the state be "so far insinuated into a position of interdependence with the [private party] that
15  it was a joint participant in the enterprise." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742,
16  748–49, 753 (9th Cir. 2020) (quoting *Jensen v. Lane County*, 222 F.3d 570, 575 (9th Cir. 2000)).

17         The FAC's allegations foreclose the possibility of state action under either test. Here, the
18  conduct that the Parent Plaintiffs challenge is the design of Google's Products, yet they do not
19  allege that the schools participated in such design. *See* FAC ¶¶ 288–295, 440–442. Moreover,
20  they specifically allege the school was *unaware* of "the inherent dangerousness of [the Google]
21  Products," and was powerless to give Plaintiff Parents control of the safety settings of Google's
22  Products or otherwise protect M.C. *Id.* ¶¶ 149, 192, 202, 219. Under Plaintiffs' own theory, the
23  government was not "significantly involve[d]" in "actions and decisionmaking" that forms the
24  basis for their constitutional claim, nor was there any "meeting of the minds" between Google
25  and Plaintiffs' schools, as required to show a "conspiracy." *O'Handley v. Weber*, 62 F.4th 1145,
26  1159 (9th Cir. 2023).

27         ***FERPA***. Plaintiffs also suggest that Google is a state actor because its policies disclose
28  that it is considered a "school official" to the extent it receives student records subject to FERPA.

-17-

FAC ¶¶ 281–283; *see also* Bali Decl. Ex. B, at 13. But "a private entity may be designated a state

actor for some purposes but still function as a private actor in other respects." *Caviness,* 590 F.3d

at 814. Even if Google is a school official for limited FERPA purposes, that "would not resolve

the question [of] whether the state 'was sufficiently involved in causing the harm to plaintiff[s]'

such that this Court should treat [Google] as acting under color of state law." *Id.* The Court must

apply the relevant tests to assess Section 1983 claims—i.e., the unmet public function and joint

action/close nexus tests. *See id.* at 814–15.

### 2.    There is no Fourteenth Amendment violation.

Even if Google were a state actor, the Parent Plaintiffs fail to allege a violation of the

Fourteenth Amendment. In the education context, the Fourteenth Amendment's Due Process

Clause grants parents the right "to make decisions concerning the care, custody, and control of

their children" by choosing "the educational forum itself." *Fields v. Palmdale Sch. Dist.*, 427 F.3d

1197, 1204, 1207 (9th Cir. 2005), *opinion amended on denial of reh'g*, 447 F.3d 1187 (9th Cir.

2006). But the right "does not extend beyond the threshold of the school door," *id.* at 1207, and

does not permit parents to challenge the particular "curriculum, administration, or policies of

public schools" that their children attend. *Parents for Priv. v. Bar*r, 949 F.3d 1210, 1232 (9th Cir.

2020).

Here, the Parent Plaintiffs' claim fails because it asserts a right to control the curricular

decisions about what technology is used in M.C.'s education. *Id.*; *see* FAC ¶¶ 288–295. It does

not matter that the Parent Plaintiffs try to frame this right in concerns about the impact that

exposure to sexually explicit material can have on a child's "safety" and "welfare." *See, e.g.*, *id.* ¶

285. There is no right to challenge a school's safety policy because it allegedly puts the parents'

child at "risk," *Parents for Priv.*, 949 F.3d at 1222, or because the parent-plaintiffs disagree as to

whether the policy is sufficiently "safe and effective," *Regino v. Staley*, 133 F.4th 951, 961 (9th

Cir. 2025) (cleaned up).

### 3.    Any constitutional claim is time barred.

The Parent Plaintiffs' claim also fails because it is untimely. Section 1983 claims are

subject to a two-year statute of limitations. *See Shalabi v. City of Fontana*, 11 Cal. 5th 842, 845–

46 (2021). They accrue "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015). Here, the FAC establishes that Plaintiff Parents knew about M.C.'s alleged harms by 2022, at the latest. Specifically, M.C. received his Chromebook in March 2020, while he was in sixth grade, and his parents claim they learned of his pornographic encounters before "M.C. entered high school[.]" FAC ¶¶ 17, 207. As M.C. would have been in middle school from sixth through eighth grade, or between 2019 and 2022, the latest Plaintiff Parents could have learned about M.C.'s harm is 2022. Because the Plaintiffs Parents did not bring suit until three years later, their constitutional claim is time barred.

**E.    Plaintiffs' UCL claim (count 7) fails because they are not entitled to equitable relief and have no viable claim on the merits.**

Plaintiffs allege a violation under California's UCL, invoking the "unlawful" and "unfair" prongs, but they have failed to state a claim under either theory. *See* FAC ¶¶ 447–457.

As a threshold matter, the only remedies available under the UCL are injunctive relief and restitution, and Plaintiffs have not alleged facts showing that they are entitled to either. *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1181 (9th Cir. 2019). As to injunctive relief, Plaintiffs do not have standing to seek an injunction under Article III or the UCL because they have not alleged facts showing that they face a "real and immediate threat of repeated injury." *Phillips v. Apple Inc.*, 725 F. App'x 496, 498 (9th Cir. 2018) (cleaned up); *see also Prescott v. Abbott Lab'ys*, 736 F. Supp. 3d 775, 786 (N.D. Cal. 2024) (cleaned up). Indeed, Plaintiffs allege that M.C. is now enrolled in a charter school that "sharply limits students' use of digital technologies," FAC ¶ 211, so there is no reason to believe they will be injured by Google's Products in the future. *See, e.g., Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 906 (N.D. Cal. 2020) (dismissing claims for injunctive relief where plaintiffs "do not allege that they are currently paying for" the service at issue or that "they actually intend or plan to purchase [the service] again in the future").

As to restitution, Plaintiffs have not shown that they lost any money or property that was acquired by Google. A defendant may only be required to pay restitution where a plaintiff's loss "clearly, inured to the defendant's benefit." *Phillips*, 725 F. App'x at 498–99 (rejecting restitution theory where the plaintiffs' lost money was acquired by third parties, not defendant). Although Parent Plaintiffs allege that they have spent "considerable financial resources in an effort to restrict [M.C.'s] internet access, keep him safe, and treat his condition," FAC ¶ 212, they do not allege that any such money was paid to Google, even indirectly. Moreover, Plaintiffs fail to show that they lack an adequate remedy at law, which is necessary "before securing equitable restitution for past harm under the UCL." *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Plaintiffs' bare assertion that they "lack an adequate remedy at law," FAC ¶ 448, is not enough; they must "allege facts or reasons why that is the case." *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1112–13 (N.D. Cal. 2022). Here, they cannot do so since all of their claims stem from a singular harm and most seek legal remedies for that singular harm. *Id.*; *see also Hubbard v. Google LLC*, 2024 WL 3302066, at *6 (N.D. Cal. July 1, 2024) (explaining that damages and disgorgement of profits are "two different remedies for a singular injury"); FAC ¶¶ 326, 344, 369, 394, 423, 446 (seeking legal remedies). Accordingly, Plaintiffs are not entitled to relief—regardless of whether they allege plausible violations of the UCL's "unlawful" or "unfair" prongs—which means dismissal is warranted.

Turning to the merits, Plaintiffs' UCL claim fails on an "unlawful" theory for lack of a predicate violation of law. Plaintiffs generally allege that "Google violated numerous state and federal laws protecting individual safety, autonomy, and parental caretaking." FAC ¶ 455. This vague assertion does not "identif[y] a specific predicate violation[]," which is "fatal." *See Smith v. Intel Corp.*, 2025 WL 2381617, at *8 (N.D. Cal. Aug. 15, 2025) (dismissing where complaint vaguely alleged violation of "other statutes and common law prohibitions, including those recited in the other counts"). To the extent Plaintiffs ground their unlawful theory on their various common law claims, that approach also fails because "negligence and product liability claims may not constitute predicate acts for a UCL claim." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1150 (N.D. Cal. 2010). Finally, none of Plaintiffs' other claims may serve as

predicates because they fail for reasons already discussed. *See Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1028 (N.D. Cal. 2012) (where "other claims fail, [the] UCL claims premised on unlawful acts ha[ve] no basis and must also fail").

Plaintiffs' "unfair" theory also fails. To start, the alleged conduct on which the "unfair" theory is based overlaps completely with conduct underlying the "unlawful" prong. *Compare* FAC ¶ 454 ("The foregoing allegations are tethered to underlying constitutional, statutory, or common-law provisions . . . ."), *with* ¶ 455 ("The foregoing allegations also establish liability under the 'unlawful' prong . . . ."). And where the unfair practices alleged under the unfair prong "overlap entirely" with the practices addressed in the unlawful prong, the unfair prong claim cannot survive if the others fail. *GMC Semitech Co. v. Cap. Asset Exch. and Trading, LLC*, 2025 WL 1236677, at *5 (N.D. Cal. Apr. 29, 2025). In any event, Plaintiffs fail to plausibly allege any "unfair" business practices under any of the potentially applicable tests. The FAC simply parrots the language of those tests. *Compare* FAC ¶ 454, *with San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1091–92 (N.D. Cal. 2018) (dismissing unfair UCL claim as "too vague" where complaint parroted "tethering" test); *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257– 58 (2010) (same as to "balancing" test). For example, Plaintiffs do not identify any practices by Google that run afoul of specific constitutional, regulatory, or statutory provisions, nor do they claim their alleged injuries could have reasonably been avoided. Likewise, although Plaintiffs conclusorily assert that the negative impact of Google's Products "outweighs" any justifications, FAC ¶ 454, they ignore the many benefits that students and schools gain from Google's Products—such as the "variety of pedagogical and administrative purposes" for which schools use those tools, *id.* ¶ 47, including to make remote education possible during the COVID-19 pandemic, *see id.* ¶ 17. *See, e.g.*, *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1215 (9th Cir. 2020) (affirming denial of unfair claim where plaintiffs "assert in a conclusory fashion that [defendant's] conduct 'outweighs any justification, motive or reason therefor,' but they do not allege how that is so"); *May v. Google LLC*, 2024 WL 4681604, at *12 (N.D. Cal. Nov. 4, 2024) (similar).

For all the foregoing reasons, Plaintiffs' UCL claim should be dismissed.

1    **F.    Plaintiffs' implied-warranty claim (count 8) cannot overcome Google's contractual**
2    **disclaimer and fails to allege sufficient injury or privity.**

3    Plaintiffs' implied-warranty claim fails for several independent reasons. FAC ¶¶ 458–467.

4    **1.    Google disclaims all warranties, including implied warranties.**

5    The GWFE Terms of Service, the agreement between Google and schools governing their

6    use of GWFE, includes a conspicuous disclaimer of all warranties in bold typeface:

7    **Disclaimer. Except as expressly provided for in the Agreement, Google does**
8    **not make and expressly disclaims to the fullest extent permitted by applicable**
     **law (a) any warranties of any kind, whether express, implied, statutory, or**
9    **otherwise, including warranties of merchantability, fitness for a particular**
     **use, title, non-infringement, or error-free or uninterrupted use of the Services**
10   **and (b) any representations about content or information accessible through**
     **the Services.**
11

12   Bali Decl. Ex. B, at 5. A similar disclaimer appears in Google's Terms of Service, which apply to

13   use of Google Search, Google Chrome, and Chrome OS[5]:

14   TO THE EXTENT ALLOWED BY APPLICABLE LAW, WE PROVIDE OUR
     SERVICES "AS IS" WITHOUT ANY EXPRESS OR IMPLIED WARRANTIES,
15   INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY,
     FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT.
16   FOR EXAMPLE, WE DON'T MAKE ANY WARRANTIES ABOUT THE
17   CONTENT OR FEATURES OF THE SERVICES, INCLUDING THEIR
     ACCURACY, RELIABILITY, AVAILABILITY, OR ABILITY TO MEET
18   YOUR NEEDS.

19   Bali Decl. Ex. C, at 13.

20   Commercial Code § 2316(2) explicitly recognizes that such disclaimers negate any

21   implied warranty, and courts regularly dismiss implied warranty claims in the face of such clear

22   disclaimers. *See, e.g.*, *In re Google Phone Litig.*, 2012 WL 3155571, at *7–8 (N.D. Cal. Aug. 2,

23   2012); *Park-Kim v. Daikin Indus., Ltd.*, 2016 WL 5958251, at *16 (C.D. Cal. Aug. 3, 2016);

24   *Velasco v. Paccar, Inc.*, 2017 WL 11632279, at *12–13 (C.D. Cal. Mar. 17, 2017).

25

26

27

28   ---
     [5] Chromebooks are manufactured by third parties, *see* FAC ¶ 55 n.4, but run on Chrome OS, and
     the Google Terms of Service apply to use of Chrome OS, *see* Bali Decl. Ex. D, at 3–4.

1

      **2.**    **Plaintiffs identify only non-recoverable emotional injury.**

2

      Even without these disclaimers, Plaintiffs fail to allege sufficient injury. Implied warranty

3

claims are contractual in nature, and "damages are generally limited to those within the

4

contemplation of the parties when the contract was entered into or at least reasonably foreseeable

5

by them at that time[.]" *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515

6

(1994). Thus, Plaintiffs cannot claim emotional harm, or economic loss flowing from emotional

7

harm, as the basis for a breach of implied warranty claim unless (1) there is "bodily harm" or (2)

8

"emotional concerns are the essence of the contract." *Erlich*, 21 Cal. 4th at 559–60. As discussed,

9

Plaintiffs identify only emotional harms and emotional concerns are not the essence of Google's

10

marketing or provision of Google's Products to schools. *See supra* IV.C.1.

11

      Having solely identified unrecoverable emotional harm and satisfied no exceptions to the

12

general rule that such injuries are insufficient, Plaintiffs implied warranty claim fails.

13

      **3.**    **Plaintiffs lack privity with Google.**

14

      Even if the disclaimers were unenforceable, and even if Plaintiffs suffered qualifying

15

injury, their claims still fail for lack of privity. As made clear by reference to a "buyer" and

16

"seller" in Section 2315, "[t]he general rule is that privity of contract [between the plaintiff and

17

defendant] is required in an action for breach of . . . implied warranty[.]" *Windham at Carmel*

18

*Mountain Ranch Ass'n v. Superior Ct.*, 109 Cal. App. 4th 1162, 1169 (2003); *Watkins v. MGA*

19

*Ent., Inc.*, 574 F. Supp. 3d 747, 754 (N.D. Cal. 2021). Implied warranty claims are dismissed

20

when "lack of privity between plaintiff and defendant is disclosed on the fac[e] of the complaint."

21

*Windham*, 109 Cal. App. 4th at 1169 (citation modified). Here, the FAC confirms that Plaintiffs

22

and Google are not in privity. *See* FAC ¶ 276 ("The terms of service governing Google's

23

Products are between Google and schools. Parents and students are not parties to those

24

contracts."). The claim should, therefore, be dismissed for lack of privity as well.

25

      **V.**    **CONCLUSION**

26

For all of the foregoing reasons, Google respectfully asks the Court to dismiss the FAC.

27

28

1    Dated:  January 12, 2026                    **PERKINS COIE LLP**

2

3                                        By:*/s/ Sunita Bali*

4                                            Sunita Bali (Bar No. 274108)
                                             Lauren J. Tsuji (Bar No. 300155)
5                                            Anna Mouw Thompson (*Pro Hac Vice*
                                             Application Forthcoming*)*

6
                                             *Attorneys for Defendant GOOGLE LLC*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 3:25-CV-08927-AMO