**EDTECH LAW CENTER PLLC**
Julie U. Liddell (*pro hac vice*)
julie.liddell@edtech.law
W. Andrew Liddell (*pro hac vice* forthcoming)
andrew.liddell@edtech.law
904 Rio Grande Street, Suite 100
Austin, Texas 78701
Tel.: (737) 351-5855

**GEORGE FELDMAN MCDONALD, PLLC**
Rebecca A. Peterson (241858)
RPeterson@4-justice.com
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Tel.: (612) 778-9595
Fax: (888) 421-4173

*Counsel for Plaintiffs*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN ROE AND JANE ROE, on behalf of themselves and their minor child, M.C., | Civ. No. 3:25-cv-08927 |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO STRIKE AND TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |
| v. | |
| GOOGLE LLC, | Date: May 14, 2026 |
| Defendant. | Time: 2:00 p.m. |
| | Court: 19th Floor, Courtroom 10 |
| | Judge: Hon. Araceli Martínez-Olguín |

# **CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.  INTRODUCTION ............................................................................................................... 1

II.  LEGAL STANDARDS ...................................................................................................... 1

III.  ARGUMENT ...................................................................................................................... 2

   A.  Google fails to show that allegations including responses from Google's Gemini may be struck. ............................................................................................................................... 2

   B.  Google fails to show that Plaintiffs' claims are barred by Section 230. .................... 4

      1.  Section 230(c)(1) does not bar M.C.'s claims. ................................................... 4

      2.  Google fails to show that Section 230(c)(2)(B) bars Plaintiffs' claims. ............ 11

   C.  Google fails to show that Plaintiffs' product-liability claims are not viable. .......... 12

      1.  Google inaccurately states that Plaintiffs must allege literal physical harm and that Plaintiffs do not allege physical harm. ..................................................... 12

      2.  Plaintiffs do not seek to hold Google liable for harmful content or ideas. ....... 14

   D.  Plaintiffs state a claim under Section 1983. ............................................................. 15

      1.  Plaintiffs allege facts showing that Google is a state actor. .............................. 15

      2.  Plaintiffs have alleged a Fourteenth Amendment violation. ............................. 19

      3.  Google fails to show that Plaintiffs' claim is time barred. ................................ 20

   E.  Plaintiffs state a UCL claim. .................................................................................... 21

      1.  Plaintiffs have standing to seek injunctive relief. ............................................ 21

      2.  Plaintiffs state a claim for restitution. .............................................................. 21

      3.  Plaintiffs plead an inadequate remedy at law. .................................................. 22

      4.  Plaintiffs plead liability under the "unlawful" and "unfair" prongs of the UCL. ............. 22

   F.  Google fails to prove its disclaimer defense to Plaintiffs' implied-warranty claim. ................. 24

      1.  Google does not prove that Plaintiffs or their schools agreed to its cited terms. ............... 24

      2.  Plaintiffs allege more than emotional injury. ................................................... 25

      3.  Plaintiffs allege that they are third-party beneficiaries of their schools' contracts. .......... 25

IV.  CONCLUSION ................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A&M Produce Co. v. FMC Corp.,*
   135 Cal. App. 3d 473 (Ct. App. 1982) ........................................................................... 24

*A.M. v. Omegle.com, LLC,*
   614 F. Supp. 3d 814 (D. Or. 2022) ................................................................................. 7

*Am. Title. Ins. Co. v. Lacelaw Corp.,*
   861 F.2d 224 (9th Cir. 1988) ......................................................................................... 18

*Anderson v. TikTok, Inc.,*
   116 F.4th 180 (3d Cir. 2024) ......................................................................................... 10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................................................................... 2

*Bardin v. Daimler Chrysler Corp.,*
   136 Cal. App. 4th 1255 (2006) ...................................................................................... 23

*Barnes v. Yahoo!, Inc.,*
   570 F.3d 1096 (9th Cir. 2009) .................................................................................. 7, 11

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ......................................................................................................... 2

*Bogard v. TikTok Inc.,*
   2025 WL 604972 (N.D. Cal. Feb. 24, 2025) .......................................................... 13, 14

*Brannum v. Overton Cnty. Sch. Bd.,*
   2006 WL 8445313 (M.D. Tenn. June 20, 2006) ........................................................... 18

*Breathitt Cty. Sch. Dist. v. Meta Platforms Inc.,*
   2026 U.S. Dist. LEXIS 26787 (N.D. Cal. 2026) ................................................... 5, 7, 11

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,*
   531 U.S. 288 (2001) ....................................................................................................... 15

*Cal. Sansome Co. v. U.S. Gypsum,*
   55 F.3d 1402 (9th Cir. 1995) ......................................................................................... 20

*Calise v. Meta Platforms, Inc.*,
  103 F.4th 732 (9th Cir. 2024) ............................................................................. 4, 5

*Caviness v. Horizon Community Learning Center, Inc.*,
  590 F.3d 806 (9th Cir. 2010) ..................................................................................... 16

*Cook v. Matrix Absence Mgmt., Inc.*,
  737 F. Supp. 3d 885 (N.D. Cal. 2024) ........................................................................ 22

*Corr. USA v. Dawe*,
  504 F. Supp. 2d 924 (E.D. Cal. 2007) ...................................................................... 2, 4

*Diaz v. First Am. Home Buyers Prot. Corp.*,
  541 F. App'x 773 (9th Cir. 2013) ............................................................................... 23

*Divino Grp. LLC v. Google LLC*,
  2022 WL 4625076 (N.D. Cal. Sept. 30, 2022) ........................................................... 11

*Doe 1 v. Univ. of San Francisco*,
  685 F. Supp. 3d 882 (N.D. Cal. 2023) ...................................................................... 1, 4

*Doe v. Grindr Inc.*,
  128 F.4th 1148 (9th Cir. 2025) .............................................................................. 7, 11

*Doe v. MG Freesites, LTD*,
  2024 WL 5339485 (N.D. Ala. Dec. 19, 2024) ............................................................ 10

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ....................................................................................... 8

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) ................................................................................ 8, 11

*F.T.C. v. Accusearch Inc.*,
  570 F.3d 1187 (10th Cir. 2009) .................................................................................... 9

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993) ...................................................................................... 1

*Fields v. Palmdale School District*,
  427 F. 3d 1197 (9th Cir. 2005) ................................................................................... 19

*Forrest v. Meta Platforms, Inc.*,
  737 F. Supp. 3d 808 (N.D. Cal. 2024) ......................................................................... 5

*Ginsberg v. Google Inc.*,
   586 F. Supp. 3d 998, 1003 (N.D. Cal. 2022)................................................................11

*Gorran v. Atkins Nutritionals, Inc.*,
   464 F. Supp. 2d 315 (S.D.N.Y. 2006).........................................................................15

*Green v. Am. Online (AOL)*,
   318 F.3d 465 (3d Cir. 2003)...........................................................................................8

*Grisham v. Philip Morris U.S.A., Inc.*,
   40 Cal. 4th 623 (2007).................................................................................................12

*Guthrie v. Transamerica Life Ins. Co.*,
   561 F. Supp. 3d 869 (N.D. Cal. 2021)........................................................................22

*Hawkins v. Shimano N. Am. Bicycle Inc.*,
   729 F. Supp. 3d 989 (C.D. Cal. 2024)........................................................................25

*Herrick v. Grindr LLC*,
   765 F. App'x 586 (2d Cir. 2019)...........................................................................8, 11

*Huckabee v. Meta Platforms, Inc.*,
   2024 WL 4817657 (D. Del. Nov. 18, 2024).................................................................10

*Hughes v. Apple, Inc.*,
   723 F. Supp. 3d 693 (N.D. Cal. 2024)........................................................................13

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
   2025 WL 2782591 (N.D. Cal. Sept. 30, 2025)..............................................................7

*In re Facebook, Inc.*,
   625 S.W.3d 80 (Tex. 2021)....................................................................................8, 11

*In re Google Android Consumer Priv. Litig.*,
   2013 WL 1283236 (N.D. Cal. Mar. 26, 2013)............................................................23

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012)......................................................................23

*In re MyFord Touch Consumer Litig.*,
   291 F. Supp. 3d 936 (N.D. Cal. 2018)........................................................................24

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
   753 F. Supp. 3d 849 (N.D. Cal. 2024)..................................................................13, 14

*Intango, LTD v. Mozilla Corp.*,
   2020 WL 12584274 (N.D. Cal. Aug. 25, 2020) ............................................................... 5

*Jane Doe No. 1 v. Backpage.com*, LLC,
   817 F.3d 12 (1st Cir. 2016) ............................................................................................ 8, 11

*Jimenez v. Superior Court*,
   29 Cal. 4th 473 (2002) ...................................................................................................... 14

*K.J. by & through Johnson v. Jackson*,
   127 F.4th 1239 (9th Cir. 2025) ......................................................................................... 21

*Kanaan v. Yaqub*,
   799 F. Supp. 3d 960 (N.D. Cal. 2025) ................................................................................. 2

*Korea Supply Co. v. Lockheed Martin Corp.*,
   63 P.3d 937 (Cal. 2003) .................................................................................................... 23

*Linton v. Axcess Fin. Servs., Inc.*,
   2023 WL 4297568 (N.D. Cal. June 30, 2023) ................................................................. 22

*Molien v. Kaiser Found. Hosps.*,
   616 P.2d 813 (Cal. 1980) .................................................................................................. 13

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024) ............................................................................................................ 9

*NetChoice, LLC v. Bonta*,
   152 F.4th 1002 (9th Cir. 2025) ......................................................................................... 10

*Nevada v. Watkins*,
   914 F.2d 1545 (9th Cir. 1990) ............................................................................................ 5

*Nor-Cal Moving Servs. v. Paylocity Corp.*,
   2025 WL 2921849 (N.D. Cal. Oct. 15, 2025) ................................................................... 4

*O'Handley v. Weber*,
   62 F.4th 1145 (9th Cir. 2023) ..................................................................................... 17, 18

*Oneto v. Watson*,
   2025 WL 2901666 (N.D. Cal. Oct. 10, 2025) ................................................................... 4

*Parents for Privacy v. Barr*,
   949 F.3d 1210 (9th Cir. 2020) ..................................................................................... 19, 20

*Parks School of Business, Inc. v. Symington*
  51 F.3d 1480 (9th Cir. 1995) ........................................................................ 16

*PC Drivers Headquarters, LP v. Malwarebytes Inc.*,
  371 F. Supp. 3d 652 (N.D. Cal. 2019) ........................................................ 11

*Pease & Curren Ref., Inc. v. Spectrolab, Inc.*,
  744 F. Supp. 945, 947 (C.D. Cal. 1990) .................................................... 2, 4

*Peguero v. Toyota Motor Sales, USA, Inc.*,
  2021 WL 2910562 (C.D. Cal. Apr. 26, 2021) ............................................ 24

*Peltier v. Charter Day School, Inc.*,
  37 F.4th 104 (4th Cir. 2022) ........................................................................ 17

*Peralta v. Countrywide Home Loans, Inc.*,
  2009 WL 3837235 (N.D. Cal. Nov. 16, 2009) .............................................. 2

*Phillips v. Apple Inc.*,
  725 F. App'x 496 (9th Cir. 2018) ............................................................ 21, 22

*Pollock v. Tri-Modal Distrib. Servs., Inc.*,
  491 P.3d 290 (Cal. 2021) .......................................................................... 20, 21

*Portnoy v. First Nat'l Ins. Co. of Am.*,
  2023 WL 12015504 (C.D. Cal. Mar. 1, 2023) ............................................ 22

*Potter v. Firestone Tire & Rubber Co.*,
  863 P.2d 795 (1993) ...................................................................................... 13

*Rawson v. Recovery Innovations, Inc.*,
  975 F.3d 742 (9th Cir. 2020) .......................................................... 15, 17, 18

*Resh, Inc. v. Skimlite Mfg. Inc.*,
  666 F. Supp. 3d 1054–59 (N.D. Cal. 2023) .......................................... 1, 2, 4

*Rosales v. Citibank, Fed. Sav. Bank*,
  133 F. Supp. 2d 1177 (N.D. Cal. 2001) ........................................................ 1

*Seaver v. Est. of Cazes*,
  2019 WL 2176316 (D. Utah May 20, 2019) ................................................ 5

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
   485 F. Supp. 3d 1113 (N.D. Cal. 2020) ................................................................ 5, 10, 21

*Sinai v. Mitchell Books*,
   1993 WL 220260 (9th Cir. June 23, 1993) ........................................................................ 15

*Smith v. Intel Corp.*,
   2025 WL 2381617 (N.D. Cal. Aug. 15, 2025) ................................................................... 22

*Smith v. State Farm Mut. Auto. Ins. Co.*,
   93 Cal. App. 4th 700 (2001) ............................................................................................. 23

*Snell v. United Specialty Insurance Co.*
   102 F.4th 1208 (11th Cir. 2024) ......................................................................................... 3

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ............................................................................................ 22

*Stearns v. Select Comfort Retail Corp.*,
   763 F. Supp. 2d 1128 (N.D. Cal. 2010) ...................................................................... 22–23

*Teknekron Customer Info. Sols., Inc. v. Watkins Motor Lines, Inc.*,
   1994 WL 11726, (N.D. Cal. Jan. 5, 1994) ...................................................................... 25

*TikTok, Inc. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*,
   578 P.3d 640 (Nev. 2025) .................................................................................................... 8

*Walters v. Seventeen Mag.*,
   195 Cal. App. 3d 1119 (1987) ...................................................................................... 14–15

*West v. Atkins*,
   487 U.S. 42, (1988) ..................................................................................................... 15, 17

*Winter v. G.P. Putnam's Sons*,
   938 F.2d 1033 (9th Cir. 1991) .......................................................................................... 15

*Zango, Inc. v. Kaspersky Lab, Inc.*,
   568 F.3d 1169 (9th Cir. 2009) .......................................................................................... 11

*Zhang v. Superior Ct.*,
   304 P.3d 163, (Cal. 2013) ................................................................................................. 23

*Ziencik v. Snap, Inc.*,
   2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ................................................................... 14

**Statutes**

34 C.F.R. § 99.31(a)(1)(B) ................................................................................ 17

47 U.S.C. § 230(c) ........................................................................ 4–5, 10–11

47 U.S.C. § 230(f)(3) ................................................................................ 5, 9

**Other Authorities**

Cal. Const. art. IX, § 5 ............................................................................ 17

Cal. Educ. Code § 49073.1(b) .................................................................... 16

Cal. Penal Code § 313.1 ............................................................................. 9

Utah Code § 76-10-1206 ............................................................................. 9

Utah Const. art. X, § 1 ............................................................................. 17

**Rules**

Fed. R. Civ. P. 12 ................................................................................... 1

# I.  INTRODUCTION

Google markets its K–12 Chromebooks as "perfect" for students of all ages. ¶ 167.[1] It claims that they are "designed for safety" and states that the Google for Education team puts "the safety, security, and privacy needs of our users first." ¶¶ 172, 175. But Google conceals the fact that it designs its K–12 Chromebooks to provide students as young as five independent, ready access to the open internet by default. Google also fails to disclose that its search algorithms promote and recommend content that may be dangerous for children in order to keep them "engaged." These design choices benefit Google, which makes money by collecting data from its users while they are online using Google Products. But it poses substantial risks of danger to children, such as exposing them to harmful content and communications with adult strangers, as occurred in this case.

Google raises several arguments in its motion to strike and to dismiss Plaintiffs' FAC ("Motion" or "Mot."). Each fails, and Google's Motion should be denied.

# II.  LEGAL STANDARDS

**Motion to Strike.** Under Rule 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054, 1058–59 (N.D. Cal. 2023) (quoting Fed. R. Civ. P. 12(f)). An immaterial matter "has no essential or important relationship to the claim for relief or the defenses being pleaded," while an "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds* (cleaned up). Scandalous matters include "any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court" or "improperly cast[s] a derogatory light on someone." *Doe 1 v. Univ. of San Francisco*, 685 F. Supp. 3d 882, 894 (N.D. Cal. 2023) (cleaned up). Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales v. Citibank, Fed. Sav. Bank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). Courts must view the pleading favorably to the pleader, treating as admitted all material facts alleged and all reasonable

---

[1] All references to Plaintiffs' first amended complaint ("FAC") will be cited as "¶" herein.

presumptions that can be drawn therefrom. *Id*. A motion to strike should not be granted unless it is clear that the matter to be stricken could not have any possible bearing on the subject matter of the litigation. *Resh*, 666 F. Supp. 3d at 1059; *Kanaan v. Yaqub*, 799 F. Supp. 3d 960, 966–67 (N.D. Cal. 2025). Courts must also consider whether no evidence supporting the allegation would be admissible. *Pease & Curren Ref., Inc. v. Spectrolab, Inc.*, 744 F. Supp. 945, 947 (C.D. Cal. 1990); *Peralta v. Countrywide Home Loans, Inc.*, 2009 WL 3837235, at *2 (N.D. Cal. Nov. 16, 2009). Further, motions to strike "will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." *Corr. USA v. Dawe*, 504 F. Supp. 2d 924, 930 (E.D. Cal. 2007). Assessment of the sufficiency of the allegations must be left for adjudication on the merits. *Id*.

**Motion to dismiss.** To survive a Rule 12(b)(6) challenge, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must accept all allegations as true, and a claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. ARGUMENT

**A. Google fails to show that allegations including responses from Google's Gemini may be stricken.**

Google moves to strike allegations from the FAC that include responses generated by Gemini, Google's own general artificial intelligence ("AI") model. Mot. at 5; ¶ 70. Those responses primarily concern Google's own products and policies. ¶ 70 n.9 ("Because Gemini is Google's own [AI] technology, it is likely uniquely capable of providing information regarding Google's own policies, disclosures, practices, and products."). Nevertheless, Google "moves to strike these 'explanations'" as "'immaterial,' 'impertinent,' and scandalous under Rule 12(f)." Mot. at 5.

Google does not analyze any of the allegations it challenges, instead suggesting that inclusion of *any* content produced by its own AI technology is immaterial, impertinent, and scandalous as a matter of law. *See id*. But Google's present position stands in stark contrast to the position Google has taken elsewhere regarding Gemini's efficacy. As explained in the FAC:

According to Google, Gemini is Google's "most capable and general [AI] model." . . . Gemini can "generalize and seamlessly understand, operate across, and combine different types of information[.]" Google touts Gemini as "pushing the next frontiers" in AI, providing users "the best the web has to offer," and meeting Google's "high bar for information quality."

¶ 70 n.8. Google has integrated Gemini into its K–12 products and released a version for children under 13, describing it as "a helpful tool to enhance and enrich teaching and learning experiences." *Id.*

Now, however, Google argues that content produced by Gemini is too unreliable to even be cited in a complaint. Mot. at 5. It argues that general AI models like Gemini are "inherently vulnerable to manipulation," citing Judge Newsom's concurring opinion in *Snell v. United Specialty Insurance Co.* for the proposition that lawyers "might try to use LLMs [large language models] strategically to reverse-engineer a preferred answer." 102 F.4th 1208, 1231 (11th Cir. 2024) (Newsom, J., concurring). But Google wholly mischaracterizes that concurrence, by which Judge Newsom was arguing *for* the use of LLMs, not against them. *Id.* In fact, his point was that such a concern is largely unfounded, as made clear by the essential context Google omitted:

I suppose there's a risk that lawyers and judges might try to use LLMs strategically to reverse-engineer a preferred answer—say, by shopping around among the available models or manipulating queries. Maybe, but that's an evergreen issue, isn't it? Although they shouldn't, lawyers and judges *can* cast about for advantageous dictionary definitions and exploit the interpretive canons, but no one thinks that's a sufficient reason to abandon those as interpretive tools. And if anything, I tend to think that the LLMs are probably less vulnerable to manipulation than dictionaries and canons, at least when coupled with [] full disclosure of one's research process.

*Id.* at 1231–32 (emphasis in original). Indeed, Google's distortion of Judge Newsom's opinion illustrates his point that source manipulation is neither new nor unique to LLMs. Google's cited authority thus supports Plaintiffs' position that AI-generated content may not be stricken from a complaint simply because of a possible risk that AI models may be manipulated.

While Google's insistence that responses produced by its own AI model are too exploitable to even meet modest pleading standards is concerning—especially given Gemini's growing prevalence in K–12 education and use by young children—Google fails to demonstrate that such information is *per se* immaterial, impertinent, or scandalous under Rule 12(f). Google fails to establish that the specific

allegations may be stricken: it does not show (or even argue) that the challenged allegations have no possible bearing on the subject matter, *Resh*, 666 F. Supp. 3d at 1059; or that they may not be established by other evidence, *Pease*, 744 F. Supp. at 947; or that they may unfairly prejudice Google, *Corr. USA*, 504 F. Supp. 2d at 930. To the extent Google suggests that the challenged allegations are "scandalous" because they are "incendiary," Mot. at 5, they simply reflect Google's conduct as alleged in the FAC. Although the allegations may cast Google in a derogatory light, that alone is not a basis for striking them. *See Doe I*, 685 F. Supp. 3d at 907 (refusing to strike as scandalous allegations about sexual misconduct by church officials that "possibly have a bearing on the claims"); *Nor-Cal Moving Servs. v. Paylocity Corp.*, 2025 WL 2921849, at *1 (N.D. Cal. Oct. 15, 2025) ("[W]hile the allegations may suggest that [defendant] engaged in fraudulent conduct, that alone does not satisfy the high bar for qualifying as scandalous, especially where the conduct is relevant to [plaintiff]'s claims."). Google's motion to strike should thus be denied.[2]

**B.  Google fails to show that Plaintiffs' claims are barred by Section 230.**

    **1.  Section 230(c)(1) does not bar M.C.'s claims.**

    Google first argues that it is immune from liability under Section 230(c)(1) of the Communications Decency Act. Mot. at 6 (citing 47 U.S.C. § 230(c)(1)). Immunity under Section 230(c)(1) applies to (1) an "interactive computer service" provider or user (2) whom a plaintiff seeks to treat—under a state-law cause of action—as a "publisher or speaker" (3) of information provided by another "information content provider." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024). Section 230(c)(1) is an affirmative defense for which Google bears the burden of proving each element. *Id.* It fails to do so as to each product at issue in this case.

---

[2] Google also contends that Plaintiffs' counsel violated this Court's standing order by failing to include a certification for their use of AI. Mot. at 6 (citing Court's Standing Order at § H(4)). But counsel do not read that requirement as applicable here, where counsel cited Gemini responses only as additional support for their factual allegations and expressly attributed such support accordingly.

Indeed, it is unclear how counsel could independently verify the accuracy of those responses—which primarily concern Google's own products and policies—without discovery. *Corr. USA*, 504 F. Supp. 2d at 930 (assessment of sufficiency of allegations must be left for adjudication on the merits); *cf. Oneto v. Watson*, No. 22-cv-05206, 2025 WL 2901666, at *2 (N.D. Cal. Oct. 10, 2025) (Araceli Martínez-Olguín, J.) (counsel failed to verify the accuracy of fictitious AI-generated legal citations).

### a. Google fails to show that it is an ICSP as to each product at issue.

Google contends that it is an interactive computer service provider ("ICSP") under Section 230. Mot. at 7. An "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." 47 U.S.C. § 230(f)(2).

Google argues that Plaintiffs allege that its products enable unrestricted access to the internet, so there is "no question" that Google meets the first element. Mot. at 7. Google's cited authorities concern internet browsers. *Intango, LTD v. Mozilla Corp*., 2020 WL 12584274, at *3 (N.D. Cal. Aug. 25, 2020) (finding Mozilla browser an ICSP); *Seaver v. Est. of Cazes*, 2019 WL 2176316, at *3 (D. Utah May 20, 2019) (finding Tor browser an ICSP). While those cases may support a finding that Google is an ICSP as to its Chrome browser, they provide no support for the other Google products at issue here, including (1) the Chromebook hardware, (2) the ChromeOS operating system, (3) Google Search, (4) the Workspace for Education suite of applications, and (5) the Admin Console, a suite of administrative tools that are available to school personnel (collectively with the Chrome browser, "Products"). ¶ 5.

"[W]hether an entity is an [ICSP] depends on context; there is no permanent all-encompassing 'provider' status that indefinitely immunizes any entity deemed in a particular case to be one." *Forrest v. Meta Platforms, Inc*., 737 F. Supp. 3d 808, 816 (N.D. Cal. 2024). "That [a party] may have been acting in an [ICSP] capacity in the context of one case—or that the parties conceded as much—does not establish that [the party] is *always* acting in that capacity in all other contexts." *Id*. at 817 (emphasis in original). Instead, the determination must be made "in the context of these allegations[.]" *Id*. Google bears the burden of proving every element as to each challenged Product. *See id*.; *Calise*, 103 F.4th at 738; *Breathitt Cty. Sch. Dist. v. Meta Platforms Inc*., No. 4:23-cv-01804-YGR, 2026 U.S. Dist. LEXIS 26787, at *327 (N.D. Cal. 2026) (noting that, even as to individual platforms, Section 230 analysis is not monolithic but is instead feature-specific). Because Google did not advance an argument in support of this element as to each of its Products, it has waived any argument. *See SEB Inv. Mgmt. AB v. Align Tech., Inc*., 485 F. Supp. 3d 1113, 1134–35 (N.D. Cal. 2020) (declining to address argument raised for first time in reply brief as waived); *Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990)).

Even if Google had offered an argument, it would necessarily fail as to the Admin Console, which does not provide internet access. Rather, the Admin Console is an internal configuration utility that provides school personnel some measure of control over students' use of school-issued Chromebooks. ¶¶ 5, 101. M.C. alleges that the Admin Console is defective because its settings are "sprawling, complex, and ever-changing"; it does not prevent students from creating and logging in with their own Google accounts; it fails to provide off-campus control; and it fails to enable schools to permit access to educational tools while blocking access to the internet writ large. ¶¶ 102–04, 107. Similarly, Google's Workspace for Education is a suite of applications used by students. ¶ 5. Google also does not show that it is an ICSP as to its failure to provide tools that would enable parents to oversee their children's use of its Products, or its decision to design its Products to *prevent* parental oversight. ¶¶ 105–11. Google thus fails to prove that it qualifies as an ICSP as to all six Products at issue here.

### b.  M.C. does not treat Google as a publisher as to each of its Products.

Google next contends that M.C. treats it as a publisher of third-party content under the second element of Section 230(c)(1). Mot. at 7. It first challenges Plaintiffs' allegations concerning its Search algorithms. *Id*. Plaintiffs address that argument under analysis of the third element in section III.B.1.c., *infra*, by showing that Google is an information content provider as to its algorithmic creation, development, and promotion of online information.

Google then selectively quotes from the FAC to mischaracterize Plaintiffs' allegations as asserting that Google should have prevented or limited access to harmful content posted by others. Mot. at 8. But Plaintiffs do not allege that Google is liable for any decision it made concerning third-party content. Rather, they allege that Google's Products are defective because they: are designed to facilitate and encourage students of all ages to go online independently by default, ¶¶ 54–64; enable students to connect with strangers, ¶¶ 21–23, 204; do not prevent students from logging out of school-managed accounts and logging back in with individual, unmanaged accounts, ¶¶ 65–67, 71; do not provide administrative controls that "restrict[] students' internet access entirely" or provide off-campus control, ¶¶ 102–04, 107; fail to provide tools to allow parents to oversee their children's internet access and in fact prevent such oversight, ¶¶ 105–11, 140–44; and fail to wholly restrict internet access and provide

administrators tools for permitting access, ¶¶ 117–27. *See Breathitt*, 2026 U.S. Dist. LEXIS 26787, at *303, *315–26 (noting that alleged defects pertaining to efficacy of parental controls, notifications, and default settings "are sufficiently independent from content to avoid Section 230"); *A.M. v. Omegle.com, LLC*, 614 F. Supp. 3d 814, 821 (D. Or. 2022) (Section 230 inapplicable where plaintiff alleged "that the product is designed [in] a way that connects individuals who should not be connected (minor children and adult men) and that it does so before any content is exchanged between them"). By failing to argue that these allegations are barred by Section 230, Google waived that defense as to them.

Google instead contends that it is protected by Section 230 because "there is no way to hold Google liable for the harms that M.C. allegedly suffered without effectively requiring Google to monitor or publish third-party content in a specific way." Mot. at 10 (cleaned up). But, again, Google fails to address the deficiencies actually alleged, and those allegations do *not* implicate any conduct of Google as a publisher and "could be remedied without referencing any" third-party content. *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 2025 WL 2782591, at *7 (N.D. Cal. Sept. 30, 2025) (cleaned up) (finding that defendant app stores could remedy alleged defects without monitoring third-party content even though the remedy might not be the most practical or best business option). Google could remedy the alleged defects while still providing digital educational services "without so much as glancing at any" third-party content. *Id.*; *see* ¶¶ 122–27 (describing how safe design would facilitate better education services); ¶¶ 222–67 (alleging that Google's Products as designed may have inflicted more harm on students than they have conferred benefits).

Google further contends that there is no distinction between claims regarding blocking certain third-party content and—what M.C. proposes—blocking access to the internet writ large. Mot. at 9. But that argument wholly ignores the publisher element, which requires a showing that a plaintiff seeks liability for decisions around monitoring, screening, editing, suppressing, and deleting certain third-party users, content, or communications, as Google's own authorities make clear. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) (acting as a publisher "involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content"); *Doe v. Grindr Inc.*, 128 F.4th 1148, 1153 (9th Cir. 2025) (plaintiffs' "claims necessarily implicate Grindr's role as a

publisher of third-party content, because discharging the alleged duty would require Grindr to monitor third-party content and prevent adult communications to minors"); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) (platform that facilitated illegal drug sales not liable for analyzing user posts, recommending user groups, and sending notifications, as those are publisher activities); *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) (protecting defendant's "decisions relating to the monitoring, screening, and deletion of content from [its] network—actions quintessentially related to a publisher's role"); *Jane Doe No. 1 v. Backpage.com*, LLC, 817 F.3d 12, 16, 21 (1st Cir. 2016) (platform that facilitated sex trafficking not liable because "choices about what content can appear on the website and in what form, are editorial choices that fall within the purview of traditional publisher functions"); *Herrick v. Grindr LLC*, 765 F. App'x 586, 588–91 (2d Cir. 2019) (platform not liable for alleged failure to edit, monitor, or remove certain third-party content); *Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (platform that facilitated sexual predation was immunized for "decisions relating to the monitoring, screening, and deletion of content" from its platform) (cleaned up); *In re Facebook, Inc.*, 625 S.W.3d 80, 94 (Tex. 2021) (Facebook not liable for decisions on how to treat user postings that facilitated child sex trafficking).

By contrast, Plaintiffs do not allege that Google has a duty to identify and suppress dangerous third-party content on school-issued Chromebooks, or on any particular website or platform. Rather, they allege that Google failed to design products that are safe for use by K–12 students. Safe products, Plaintiffs allege, would not permit and encourage students to go online without adult supervision by default; would not facilitate unsupervised communications between students and strangers; would include admin tools that block internet access, prohibit individual accounts, and provide administrators off-campus controls; and would include tools that support parental oversight. ¶¶ 21–23, 54–67, 71, 104–11, 140–44, 117–27, 204; *see TikTok, Inc. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 578 P.3d 640, 651 (Nev. 2025) (declining to dismiss claims under Section 230 that concerned "the design of TikTok's platform rather than the content of posted videos" and "arise from TikTok's alleged duty to provide a reasonably safe social media app rather than any failure to edit or remove third-party content"). Thus,

redesigning its Products for student safety would not, as Google contends, require that Google "police its network," or monitor, edit, remove, or make any decisions about third-party content. Mot. at 9.

### c. Google is an information content provider as to its content curation.

As to the third element of Section 230(c)(1), Google makes no argument that it is not an "information content provider," instead stating that Plaintiffs do not allege that Google created content itself so that requirement "is easily satisfied." Mot. at 10. But that is refuted by the FAC.

Section 230 defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Plaintiffs allege that Google Search does not neutrally deliver third-party content, but instead "personalizes" content using student data, including their age. ¶¶ 72–76. Google's algorithms actively surface and promote content that is dangerous for children—even in response to benign queries—such as pornography, which poses a substantial risk of compulsive and even addictive use to children. ¶¶ 18, 29, 78–85, 195–96. Distributing such material to minors is unlawful. Cal. Penal Code § 313.1; Utah Code § 76-10-1206. This individualized curation—designed by Google to operate, not neutrally, but for its benefit and at students' expense—materially contributed to the distribution of harmful material to M.C. and constitutes creation or development of online information by Google in whole or in part. 47 U.S.C. § 230(f)(3); *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1200 (10th Cir. 2009) (no immunity where evidence showed that website contributed to alleged unlawful conduct). Because Google failed to advance an argument as to how its alleged self-interested curation does not meet that definition, it waived that argument.

Even had Google offered an argument, it could not establish as a matter of law that its algorithmic curation and promotion of content falls outside the scope of an information content provider. In *Moody v. NetChoice, LLC*, the Supreme Court considered whether state laws that "restrict the ability of social-media platforms to control whether and how third-party posts are presented to other users" run afoul of the First Amendment. 603 U.S. 707, 717 (2024). The Court held that an algorithm that reflects "editorial judgments" about "compiling the third-party speech it wants in the way it wants" is the platform's own "expressive product" and is thus protected by the First Amendment. *Id*. Since then, several courts have

observed that recommendation algorithms constitute first-party speech that is not entitled to Section 230 immunity. *See, e.g., Anderson v. TikTok, Inc*., 116 F.4th 180, 184 (3d Cir. 2024) (TikTok's recommendation algorithm "is TikTok's own expressive activity" that falls outside Section 230, especially where plaintiff had not sought out the content); *Doe v. MG Freesites, LTD*, 2024 WL 5339485, at *11 (N.D. Ala. Dec. 19, 2024) (defendants' algorithm that "materially contributed to and developed the" third-party content by prioritizing content for its own commercial purposes was not protected by Section 230); *Huckabee v. Meta Platforms, Inc*., 2024 WL 4817657, at *3–4 (D. Del. Nov. 18, 2024) (Meta's collection of user data to train algorithms "to predict what content will keep and attract users" and prioritize posts in users' newsfeeds is Meta's "own expressive activit[y]").

That interpretation is consistent with the intent and text of Section 230(c), the express purpose of which is to provide "[p]rotection for 'Good Samaritan' blocking and screening of offensive material[.]" 47 U.S.C. § 230(c). It is certainly consistent as applied here, where Plaintiffs allege that Google designs its algorithms to maximize student engagement by surfacing and recommending content based on troves of student data it has extracted and promotes harmful content unrelated to a student's search query in service of Google's bottom line. ¶¶ 72–97, 128–39. In steering 11-year-old M.C. to pornography in response to his search for information about cartoon characters, Google was not attempting to block or screen offensive content and is thus not entitled to Good Samaritan protection.[3]

Finally, although Google states that Plaintiffs' warning-defect claims are barred by Section 230, Mot. at 6, it provides no argument or authority and has thus waived any such challenge. *SEB Inv.*, 485 F. Supp. 3d at 1134–35. Those claims are also well supported by the FAC, which describes how Google not only fails to warn parents, it undertakes efforts to *prevent* them from overseeing their children's use of its Products—and even from knowing that their children are using its Products at school. ¶¶ 11, 19, 29, 77, 108–09, 143, 158–61, 191, 198, 274, 280, 286–91. Further, if Google's Products are indeed akin

---

[3] Further, any questions regarding the details of how Google's algorithms curate, organize, promote, and recommend information provided through the internet are fact questions for which Google carries the burden and may not be resolved at this stage. *See NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1021 (9th Cir. 2025) (observing that determining whether a personalized recommendation algorithm is "expressive" for First Amendment purposes "is fact intensive").

to platforms that facilitate child sex trafficking, *Facebook*, 625 S.W.3d at 94; *Backpage.com*, 817 F.3d at 16; child pornography, *Grindr*, 128 F.4th at 1153; harassment, *Herrick*, 765 F. App'x at 588; revenge pornography, *Yahoo!*, 570 F.3d at 1098; illegal drug sales, *Dyroff*, 934 F.3d 1095; or content intended to incite violence against marginalized populations, *Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1003 (N.D. Cal. 2022). Google has a duty to warn schools, parents, and children accordingly. At minimum, it should not market them for use by students of all ages—let alone as "designed for safety," providing "[i]nformation and content you can trust," and "PERFECT FOR K-12." ¶¶ 166–75. *See Breathitt*, 2026 U.S. Dist. LEXIS 26787, at *301 n.3, *344 (denying summary judgment on failure-to-warn claims as supported by substantial evidence, including internal documents showing that Google entered the K–12 market to target "[k]ids under 13[, ] the fastest-growing Internet audience in the world" and to "onboard kids into Google's ecosystem" and "get that loyalty early, and potentially for life").

### 2. Google fails to show that Section 230(c)(2)(B) bars Plaintiffs' claims.

Google next contends that M.C.'s claims regarding the defectiveness of its administrator tools are barred by Section 230(c)(2)(B). Mot. at 10. It notes that courts routinely dismiss claims that such tools "misclassify harmful content or filter out the wrong material." *Id*. Then, without explanation, it states that claims that its tools are "inadequate and overwhelming" and "should have been designed differently or had different default settings . . . are categorically immunized by Section 230(c)(2)(B)."

Like Section 230(c)(1), however, Section 230(c)(2)(B) is limited to actions involving judgment calls by the provider or user: it refers to "material that *the provider or user considers* to be obscene . . . or otherwise objectionable[.]" 47 U.S.C. § 230(c)(2)(A) (emphasis added). Google's authorities are all distinguishable on that basis, as each concerns tools that restricted access to certain online material, which involved editorial decision making. *See Divino Grp. LLC v. Google LLC*, 2022 WL 4625076, at *17 (N.D. Cal. Sept. 30, 2022) (addressing claims based on "defendants' decisions regarding the application of Restricted Mode" on YouTube); *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1175 (9th Cir. 2009) ("[T]his case involves providing the technical means for others to restrict access to material Kaspersky [the company providing the filtering software] finds objectionable[.]"); *PC Drivers Headquarters, LP v. Malwarebytes Inc.*, 371 F. Supp. 3d 652, 660–62 (N.D. Cal. 2019) (technology

designed to restrict access to certain websites that the company considered to contain objectionable material was found to be immune because "section 230 grants providers and users of filtering software discretion to determine what is 'otherwise objectionable' content").

By contrast, Plaintiffs do not challenge the effectiveness of the Admin Console in restricting M.C.'s access to any specific material that Google *or* M.C.'s schools considered "objectionable"; rather, they claim that those tools are defective because they are not available and activated by default and instead are optional, costly, and difficult to implement. ¶¶ 100–02. Plaintiffs further allege that those tools are defective because they do not enable administrators to prevent students from logging out of school-managed accounts and logging in with personal, unmanaged Google accounts, ¶ 103; do not extend off campus, ¶ 106–07; and do not enable schools to restrict students' internet access entirely, ¶ 104. Because those allegations do not challenge decisions around identifying or filtering content, they do not come within Section 230(c)(2)(B)'s ambit.

## C. Google fails to show that Plaintiffs' product-liability claims are not viable.

Google's arguments that Plaintiffs' product-liability claims are not viable fail.

### 1. Google inaccurately states that Plaintiffs must allege literal physical harm and that Plaintiffs do not allege physical harm.

Google first argues that California law requires a showing of physical injury and that allegations of addiction, emotional injury, or psychological harm do not suffice. Mot. at 12. It contends that the California Supreme Court has "concluded—in the products-liability context—that addiction itself is not an 'appreciable physical injury,' and expressly rejected the notion that 'addiction itself was actionable[.]'" *Id.* (citing *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 641 n.11 (2007)). But Google again misstates the law: *Grisham* concerned whether *economic loss* resulting from addiction triggered the statute of limitations for *physical injury* resulting from addiction. *Grisham*, 40 Cal. 4th at 641 n.11. The court did *not* decide the question of whether "the addiction itself was actionable" because the plaintiff had not alleged that it was, instead alleging only that her addiction had caused her economic loss. *Id.* As to that question, the court assumed, "without deciding, that the economic costs of addiction can be considered an 'appreciable and actual harm' for statute of limitation purposes." *Id.*

California courts have long held that "the unqualified requirement of physical injury is no longer justifiable." *Molien v. Kaiser Found. Hosps.*, 616 P.2d 813, 819 (Cal. 1980); *see also Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 810 (1993) ("Our reasons for discarding the physical injury requirement in *Molien* [] remain valid today" because "the physical injury requirement is a hopelessly imprecise screening device[.]"). In fact, as Google knows, a massive multidistrict litigation is underway regarding the addictiveness of social-media platforms, including Google's YouTube, specifically as those platforms affect children. *See, e.g, In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849 (N.D. Cal. 2024) (seeking liability against Google and other companies for including addictive design features on their platforms). One court in those cases rejected "Meta's implicit premise that addiction is a nontangible, emotional harm," noting that "knowingly developing tools that encourage youth addiction cannot fairly be classified as either trivial or speculative[.]" *Id.* at 895–96 (cleaned up). Similarly, another court in this District found "cause for skepticism that California courts would categorically bar product liability recovery for pure emotional distress injury." *Hughes v. Apple, Inc.*, 723 F. Supp. 3d 693, 710 n.7 (N.D. Cal. 2024).

Google then incongruously cites the economic-loss rule for the proposition that physical injury must be alleged. Mot. at 13. But, as the *Hughes* court observed, that rule is inapplicable, as it distinguishes between physical injury and economic loss, *not* physical injury and emotional harm, which the court explained "are equally distinct from economic harm":

> Apple's reliance on the economic loss rule is question-begging. Apple is invoking a doctrine that draws a distinction between economic harm and physical harm to argue that there must also be a distinction between emotional harm and physical harm. One does not follow from the other. Tort law often uses the term "physical harm" to distinguish from economic harm, and it has been doing so for a long time. But that only begs the question of how emotional harm should be treated. Indeed, emotional harm and physical harm are equally distinct from economic harm, so the economic loss rule should have nothing to say about whether a plaintiff can recover for emotional harm in a strict products liability case.

723 F. Supp. 3d at 710. The court thus declined to dismiss the plaintiffs' claims on that basis. *Id.*; *see also Bogard v. TikTok Inc.*, 2025 WL 604972, at *8 (N.D. Cal. Feb. 24, 2025) ("*Jimenez*, which considered only whether allegations of economic harm were sufficient to support a claim for strict

products liability, did not address whether emotional harm could support such a claim.") (citing *Jimenez v. Superior Court*, 29 Cal. 4th 473, 482 (2002)).

Even if Plaintiffs were required to allege physical injury, they have extensively alleged economic, emotional, *and* physical injury. ¶¶ 84–85 (describing addiction-based harm), ¶ 197 (chronic exposure to "this dopamine-inducing content" has resulted in "long-term alterations to his brain"); ¶ 203 (M.C. was diagnosed with ADHD, autism, and generalized anxiety disorder); ¶¶ 21, 23, 204 (M.C. engaged in dangerous behaviors, such trying to meet strangers for sex, exchanging sexually explicit photos with strangers, sending money to strangers; and providing strangers his home address); ¶¶ 24, 205 (M.C. required enrollment in a sex addiction program); ¶ 212 (Roes have expended considerable financial resources in managing M.C.'s addiction); ¶¶ 22, 213 (M.C.'s addiction has substantially interfered with his ability to learn, work, and maintain meaningful relationships with others). Their allegations support any applicable injury requirement. *See*, *e.g.*, *Social Media Adolescent Addiction*, 753 F. Supp. 3d at 895 ("[B]ody image and eating *disorders* are real conditions that can be diagnosed by medical professionals" and constitute "substantial injury") (emphasis in original); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) ("'loss of health and strength' constitute physical harm for purposes of a strict liability claim"). Google's authorities, which analyze when emotional distress alone is sufficient to support emotional-distress claims, are inapposite. Mot. at 13–14.

**2. Plaintiffs do not seek to hold Google liable for harmful content or ideas.**

Google contends "that exposure to allegedly dangerous 'ideas and expression' cannot support products-liability claims[.]" Mot. at 15. But its corresponding argument is unclear. To the extent it argues that M.C. seeks to hold Google liable for failing to review and suppress the content posted by any user on any website, that argument fails for the reasons described in section III.B.1.b., *supra*. *Cf. Walters v. Seventeen Mag.*, 195 Cal. App. 3d 1119, 1122–23 (1987) (magazine publisher not liable for failing to investigate safety of product in advertisement it published); *Bogard*, 2025 WL 604972, at *7 (company not liable for decision to not remove user content from its platform). If Google argues that M.C. claims that Google endorsed the predator's communications, it is unsupported by the FAC. *Cf. Walters*, 195 Cal. App. 3d at 1122 (publisher not liable for ad placement or failure to investigate safety of advertised

product). If Google argues that its Products are not "products" subject to product-liability claims, it cites no legal support, as its authority involves challenges to ideas conveyed in general-audience books, not the functionality of K–12 school computers. *Cf. Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 319 (S.D.N.Y. 2006) (publisher not liable for harm caused by diet described as safe in book it published); *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034, 1036 (9th Cir. 1991) (publisher not liable for harm caused by mushrooms described as safe in book it published); *Sinai v. Mitchell Books*, 1993 WL 220260, at *1 (9th Cir. June 23, 1993) (dismissing claim against publishers of books containing allegedly inaccurate information about auto emissions). Google's arguments thus fail.

**D. Plaintiffs state a claim under Section 1983.**

Google's arguments that Plaintiffs do not state a claim under Section 1983 fail.

**1. Plaintiffs allege facts showing that Google is a state actor.**

Google first argues that Plaintiffs fail to allege facts showing state action. Mot. at 16. There are at least four general tests for identifying state action: public function, joint action, governmental compulsion or coercion, and governmental nexus or "entwinement." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020); *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) (equating "entwine[ment]" and governmental nexus). "At bottom, the inquiry is always whether the defendant has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Rawson*, 975 F.3d at 748 (cleaned up); *see also West v. Atkins*, 487 U.S. 42, 56 n.15 (1988) ("If an individual is possessed of state authority and purports to act under that authority, his action is state action.") (cleaned up). The FAC alleges state action under the public-function, joint-action, and entwinement tests.

**a. Google is a state actor in performing a public function.**

Plaintiffs allege that Google performs a public function in providing state-required education services to public schools "for a variety of pedagogical and administrative purposes, such as enabling students to access course materials; complete and submit assignments; store their files; manage their schedules; create content; search for information; and communicate and work with their teachers and peers." ¶ 47. Absent those functions, school ceases to be recognizable as school. Google has positioned

itself as the *de facto* platform for technology services in education. ¶ 268. Its "deep entrenchment in public schools has radically changed public education" and even altered the purpose of education. *Id.* "Google owns and operates the digital environment in which [students] participate in school[.]" ¶ 269. Even Google touts the centrality of its role in education, claiming that it is "transforming classrooms into innovative learning spaces of the future." ¶ 270. Experts worry that "Google's incursion into education threatens and devalues traditional roles of teachers and librarians as sources of wisdom and experts in pedagogy." ¶ 272. By facilitating and influencing the core functions of school and school personnel in K–12 public education, Google is a state actor as to those functions. *Id.*

Google relies on *Caviness v. Horizon Community Learning Center, Inc.*, but that case supports Plaintiffs' position. 590 F.3d 806 (9th Cir. 2010). There, a fired teacher brought Section 1983 claims against his employer, a private charter school, alleging that it violated his constitutional rights. *Id.* at 813. The teacher argued that because charter schools were statutorily designated as "public schools," they were state actors for all purposes, including matters involving internal employment disputes. *Id.* The court disagreed, noting that the public-school designation alone did not "resolve the question whether the state was sufficiently involved in causing the harm to plaintiff such that we should treat [defendant] as acting under color of state law." *Id.* at 814 (cleaned up). Google argues that, under *Caviness*, a private education-services provider can never be a state actor. Mot. at 16. But *Caviness* expressly rejected any such bright-line rule, observing that "[i]t is important to identify the function at issue because an entity may be a State actor for some purposes but not for others." 590 F.3d at 812. And the "inquiry begins by identifying the specific conduct of which the plaintiff complains." *Id.* at 813 (cleaned up). Under *Caviness*, therefore, Plaintiffs have alleged facts showing that Google *is* a state actor for the purpose of performing administrative and pedagogical functions for public schools, which are the focus of the FAC, as opposed to purposes relating to Google's internal employment functions.

Google also relies on *Parks School of Business, Inc. v. Symington* for the proposition that the public-function test is unmet where a statute directs that "either the state or a private institution . . . may guarantee students loans." 51 F.3d 1480, 1486 (9th Cir. 1995). But that case is distinguishable, as the private entity there had *no* connection to the state: "[T]he State has no powers to regulate or supervise

[the entity]'s activities in any way, and no state officials take part in [the entity]'s operations." *Id*. Here, the statute on which Google relies requires substantial school control over the private third party's conduct. *See* Cal. Educ. Code § 49073.1(b). And Google itself claims it is a "school official" under the Family Educational Rights and Privacy Act ("FERPA"), which would mean "that it acts as a school employee and is subject to the school's control[.]" ¶ 281; 34 C.F.R. § 99.31(a)(1)(B) (defining when a contractor can be a "school official").

This case is more like *Peltier v. Charter Day School, Inc*., in which the Fourth Circuit held that a charter school performed a public function in setting a student dress code. 37 F.4th 104 (4th Cir. 2022). There, a state statute permitted the state to delegate its constitutional duty to operate schools to charter schools. *Id*. at 116. The court observed that "[t]he Supreme Court has held that such a delegation of a state's responsibility renders a private entity a state actor," quoting *West*, 487 U.S. at 56, and explaining that "a state cannot delegate duties that 'it is constitutionally obligated to provide and leave its citizens with no means for vindication of those [constitutional] rights.'" *Id*. at 118. "Were we to adopt [defendant]'s position, [the state] could outsource its educational obligation to charter school operators, and later ignore blatant, unconstitutional discrimination committed by those schools." *Id*. Similarly, Google's position would strip students (and their parents) of significant constitutional protections simply because schools decided to delegate their duty to provide core education services to a private entity. *See* Cal. Const. art. IX, § 5 (requiring state provision of education); Utah Const. art. X, § 1 (same).

### b. Google is a state actor under the joint-action and entwinement tests.

Google next argues that Plaintiffs do not allege facts meeting the joint-action or entwinement tests. Mot. at 17. Joint action asks whether the state is "so far insinuated into a position of interdependence with the private party that it was a joint participant in the enterprise." *Rawson*, 975 F.3d at 748. Entwinement exists when "a sufficiently close nexus between the state and the private actor [exists] so that the action of the latter may be fairly treated as that of the State itself[.]" *Id*.[4]

Google argues that Plaintiffs' allegations fall short because they do not allege that the schools participated in the design of its Products. Mot. at 17. But its cited authority is inapposite. In *O'Handley*

---

[4] The state-action allegations under these tests are similar and are thus presented together for brevity.

*v. Weber*, the court rejected a claim by a Twitter user who objected to Twitter's decision to suppress his tweets and suspend his account. 62 F.4th 1145, 1156 (9th Cir. 2023). It held that allegations that Twitter's decision was prompted by a message from the California Secretary of State identifying one of the user's tweets as spreading election-related 'disinformation' did not show that Twitter had "ceded control over [its] content-moderation decisions to the State[.]" *Id.* at 1154, 1156.

**First**, *O'Handley* involved state-policy analysis, not state-actor analysis, and may be disregarded on that basis alone. *Id.* at 1157 (noting that cases "have not been entirely consistent" on whether a party must satisfy the state-policy requirement before the state-actor requirement). **Second**, Twitter's tenuous alleged ties to the government bear no resemblance to the close ties between Google and schools alleged here. *See* ¶ 10 (Google's school administrative tools "can make Google's Products somewhat less dangerous"); ¶¶ 191, 280 (Google attempts to shift its legal obligations to schools); ¶¶ 77, 158–60, 269, 280–83 ("Google owns and operates the digital environment in which [students] participate in school"); ¶ 275 (students' access to the internet "is inseparably controlled by Google and schools"); ¶ 276 (schools contract with Google for its Products). Moreover, Google itself states that school administrators manage its Products. Mot. at 2, 4, 11; *Am. Title. Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) (courts may consider statements in a brief as admissions). **Third**, *O'Handley* does not involve product design, and Google cites no case holding that state action requires state control over the design of a private entity's product used by the state. Rather, that question goes to the ultimate issue of liability. The test here is whether "a sufficiently close nexus between the state and the private actor [exists] so that the action of the latter may be fairly treated as that of the State itself[.]" *Rawson*, 975 F.3d at 748. Under that test, Plaintiffs' allegations regarding the close relationship between Google and M.C.'s schools in managing Google's Products suffice. *See id.*; *see also Brannum v. Overton Cnty. Sch. Bd.*, 2006 WL 8445313, *10 (M.D. Tenn. June 20, 2006) (finding tech company was a state actor where it worked closely with school to install security cameras throughout campus), *aff'd in part, rev'd in part on other grounds*, 516 F.3d 489, 495 (6th Cir. 2008) (characterizing installation of the cameras as "state action").

Finally, Google argues that its self-conferred status as a "school official" under FERPA is irrelevant to the analysis because Google can be a state actor as to some purposes but not as to others.

Mot. at 18. But Google fails to explain how its purported status as a school official for purposes of collecting and managing student information is irrelevant to its relationship with the state in providing education services, including collecting and managing student information. ¶ 47. Indeed, that claimed status is central to Google's efforts to avoid parental notice or involvement in their children's use of its Products. ¶¶ 281, 433. Google cannot reap the benefits of holding itself out as a school official for obtaining access to student information without parental involvement while shirking the attendant burdens of being a state actor for those same purposes.

### 2. Plaintiffs have alleged a Fourteenth Amendment violation.

Google next argues that the Roes fail to allege a Fourteenth Amendment violation. Mot. at 18. In support, it cites *Fields v. Palmdale School District* for the proposition that parents' rights are limited to choosing "the educational forum itself." 427 F.3d 1197, 1204, 1207 (9th Cir. 2005), *opinion amended on denial of reh'g*, 447 F.3d 1187 (9th Cir. 2006). But, yet again, Google misrepresents the law. It cites *Fields* for the proposition that parents' Fourteenth Amendment "right 'does not extend beyond the threshold of the school door[.]'" Mot. at 18 (quoting 427 F.3d at 1207). But the Ninth Circuit expressly deleted that language from *Fields* by its amended opinion in that case, clarifying that its holding was considerably more limited than that language suggested:

> To make our holding more precise we delete the sentence appearing at lines 9–10 of page 15076 of the Slip Opinion ("In sum, we affirm that the *Meyer–Pierce* right does not extend beyond the threshold of the school door.") and substitute therefor the following: "In sum, we affirm that the *Meyer–Pierce* due process right of parents to make decisions regarding their children's education does not entitle individual parents to enjoin school boards from providing information the boards determine to be appropriate in connection with the performance of their educational functions, or to collect monetary damages based on the information the schools provide."

*Fields*, 447 F.3d at 1190–91. The court's amended opinion thus makes clear that parents' rights do not vanish once they have chosen a school; those rights simply do not include the right to prevent schools from providing board-approved information to students. *Id*. And that is not what the Roes allege.

Google also cites *Parents for Privacy v. Barr*, 949 F.3d 1210, 1232 (9th Cir. 2020). In that case, the plaintiff parents challenged a school district's "student safety plan" that permitted transgender students to use school bathrooms and locker rooms consistent with their gender identity, and the court

disagreed with the parents' claims that they had a constitutional right to prevent transgender students from sharing school facilities with their children. *Id*. at 1230, 1233. The court found that while the purported risk of the plaintiffs' children being exposed to unclothed transgender children in the bathrooms and locker rooms "[did] not involve the provision of information, as did *Fields*, it similarly involve[d] students being exposed to things of which their parents disapprove." *Id*. at 1231.

By contrast—and contrary to Google's mischaracterization of their claim—the Roes do not "assert a right to control the curricular decisions about what technology is used in M.C.'s education" or any school-created policy. Mot. at 18. Rather, they allege that Google violated their right to make decisions concerning the care, custody, and control of M.C. by: (1) designing products for use by K–12 students that facilitate and encourage unrestricted, unsupervised internet access; (2) recommending content to their 11-year-old son that posed a substantial risk of harm to him without their knowledge; (3) facilitating unauthorized, unsupervised communications between M.C. and strangers; (4) failing to obtain their consent before permitting M.C. to use its data-extractive Products in violation of federal law and instead actively subverting that requirement; (5) failing to warn them about the dangers of its Products; (6) failing to provide tools that would have allowed them to oversee M.C.'s internet access while using its Products and instead preventing any such oversight; and (7) preventing them from protecting M.C. while he used Google's dangerous Products at home. ¶¶ 21–23, 98, 105–08, 155–62, 193, 196, 230, 281, 286–95, 439–44. Google has thus waived any challenge to the allegations supporting the Roes' claim, which sufficiently state a violation of the Roes' parental rights.

### 3. Google fails to show that Plaintiffs' claim is time barred.

Google argues that the Roes' claim is barred because "the latest Plaintiff Parents could have learned about M.C.'s harm is 2022." Mot. at 19. In support, it cites allegations that they learned of M.C.'s pornographic encounters before "M.C. entered high school[.]" *Id*. (citing ¶¶ 17, 207).

Google bears the burden of proof as to each element of a limitations affirmative defense. *Pollock v. Tri-Modal Distrib. Servs., Inc*., 491 P.3d 290, 305 (Cal. 2021). "A tort claim does not accrue until there is wrongdoing *and* actual and appreciable harm." *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995) (cleaned up, emphasis in original). Google must therefore prove that the alleged

wrongdoing and harm occurred outside the limitations period. Google fails to meet that burden: its only argument pertains to the Roes' allegation that Google designed its Products in a manner that exposed M.C. to pornography without their knowledge. But, as previously stated, there are at least six other separate bases for the Roes' claim, which Google does not address; nor does Google explain how their claim accrued when they learned M.C. had encountered pornography. It has waived any such argument and failed to carry its burden. *See Pollock*, 491 P.3d at 305; *SEB Invest*, 485 F. Supp. 3d at 1134–35.

**E. Plaintiffs state a UCL claim.**

Google's challenges to Plaintiffs' UCL claim fail.

**1. Plaintiffs have standing to seek injunctive relief.**

Google first contends that Plaintiffs do not have standing to seek an injunction under Article III or the UCL because they have not alleged facts showing that they face a "real and immediate threat of repeated injury." Mot. at 19. It argues that, because M.C. is now enrolled in a low-tech charter school, there is no reason to believe Plaintiffs will be injured by Google's Products in the future. *Id*. But "[t]he party asserting mootness has the heavy burden of establishing that there is no effective relief remaining for a court to provide." *K.J. by & through Johnson v. Jackson*, 127 F.4th 1239, 1253 (9th Cir. 2025) (cleaned up). And the Roes were forced to pull M.C. from his school. ¶¶ 26, 211. This displacement constitutes ongoing injury supporting standing for injunctive relief. *K.J.*, 127 F.4th at 1252–53 (finding standing where child was unable to return to school because of alleged wrongful conduct).

**2. Plaintiffs state a claim for restitution.**

Google next contends that Plaintiffs cannot seek restitution because they fail to allege a loss that inured to Google's benefit. Mot. at 20. But Plaintiffs do allege that Google received a benefit at their expense, if indirectly. *Phillips v. Apple Inc*., 725 F. App'x 496, 498 (9th Cir. 2018) (benefit may be direct or indirect). They allege that Google benefitted by selling and licensing Products that failed to include adequate safety features, and the Roes were thus required to expend resources to protect M.C. while using those dangerous Products. ¶¶ 7, 9, 212, 457. They allege that Google was further enriched by its design choices, which enabled it to collect vast troves of student data—data that Google used in recommending harmful content to M.C. ¶¶ 13, 88–97, 164, 197. There is thus a "traceable connection"

between the benefit Google received in designing, marketing, licensing, and operating its dangerous Products in M.C.'s schools—Products that Google incurred little or no expense to make safe—and the loss the Plaintiffs suffered in an effort to protect M.C. while using those Products. *Cf. Phillips*, 725 F. App'x at 499 & n.3 (finding plaintiffs' loss in paying data-overuse charges to their carriers was not connected to Apple's revenue-sharing agreement with AT&T).

### 3. Plaintiffs plead an inadequate remedy at law.

Google also argues that Plaintiffs' UCL claim fails because they do not allege that they lack an adequate remedy at law, stating that an allegation to that effect is insufficient. Mot. at 20. However, the Ninth Circuit has held only that plaintiffs must "plead that [they] lack[] adequate remedies at law if [they] seek equitable relief," which Plaintiffs have alleged. ¶¶ 448–49; *see Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021) (collecting cases construing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)). More is not required because "evaluating remedies is a fact-intensive inquiry and it may not become apparent until the facts are settled whether legal inquiries will be adequate." *Cook v. Matrix Absence Mgmt., Inc.*, 737 F. Supp. 3d 885, 891–92 (N.D. Cal. 2024). Further, many courts have declined to apply that requirement to claims for injunctive relief. *See Linton v. Axcess Fin. Servs., Inc.*, 2023 WL 4297568, at *2 (N.D. Cal. June 30, 2023) (collecting cases). Here, the displacement of M.C. from his school may not be adequately remedied by monetary relief.

### 4. Plaintiffs plead liability under the "unlawful" and "unfair" prongs of the UCL.

Google contends that Plaintiffs fail to identify a predicate violation of law. Mot. at 20. But Plaintiffs state that Google's conduct violated "the laws as alleged herein, which protect student safety and parental caretaking interests," plainly referring to their product-liability, warranty, and Section 1983 claims. ¶ 452; *Portnoy v. First Nat'l Ins. Co. of Am.*, 2023 WL 12015504, at *3 (C.D. Cal. Mar. 1, 2023) ("[A] plaintiff does not need to re-assert and re-allege all the prior allegations when making a UCL claim.") (cleaned up). Google's authority is distinguishable, as the plaintiffs there did not identify "which 'other laws' they intend[ed] to use in defining what is unlawful," and the claims on which they appeared to rely had been dismissed. *Smith v. Intel Corp.*, 2025 WL 2381617, at *8 (N.D. Cal. Aug. 15, 2025).

Google then argues that "negligence and product liability claims may not constitute predicate acts for a UCL claim," citing a 2010 federal case. Mot. at 20 (citing *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1150 (N.D. Cal. 2010)). But the California Supreme Court has more recently held that violations of common law can serve as a predicate to a UCL claim, in keeping with the broad language of the UCL. *Zhang v. Superior Ct.*, 304 P.3d 163, 176 (Cal. 2013); *see also Diaz v. First Am. Home Buyers Prot. Corp.*, 541 F. App'x 773, 775 (9th Cir. 2013) (citing *Zhang*, holding plaintiff stated a UCL claim "because her claims are premised on fraud, breach of contract and breach of the implied covenant of good faith and fair dealing"); *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001) ("Virtually any law federal, state or local can serve as a predicate for an action under [the UCL]."). Further, Plaintiffs' UCL claim is also predicated on a Fourteenth Amendment violation and their warranty claim. *See Stearns*, 763 F. Supp. 2d at 1150 ("Plaintiffs' warranty claims could serve as a predicate for the 'unlawful' prong"); *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 954 (Cal. 2003) (an act is "unlawful" under the UCL "if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard").

Google also argues that Plaintiffs' "unfair" theory falls short. Mot. at 21. It first states that that theory "overlaps completely" with the "unlawful" theory. *Id*. Not so: Plaintiffs allege that, *in addition* to its violations of law, Google engages in "practices that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and that "the negative impact of Google's practices on school-aged children and their parents far outweighs the reasons, justifications, and motives of Google." ¶ 454. "Unfair simply means any practice whose harm to the victim outweighs any benefits." *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, *9 (N.D. Cal. Mar. 26, 2013). The FAC alleges facts to that end. ¶¶ 222–67. Further, unfairness "is a factual determination that cannot be made at this stage of the proceedings." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1073 (N.D. Cal. 2012). A practice may also be unfair when it offends an established public policy that is "tethered to specific constitutional, statutory, or regulatory provisions." *Bardin v. Daimler Chrysler Corp.*, 136 Cal. App. 4th 1255, 1260–61 (2006). Plaintiffs have alleged violations of the Fourteenth Amendment, the Children's Online Privacy Protection Act, FERPA, and California's statutory implied warranty. ¶¶ 77,

158–59, 285–95, 465. Finally, even if Plaintiffs' "unfair" theory was based entirely on its "unlawful"

theory, it would survive because Plaintiffs' other claims survive for the reasons stated herein, *passim*.

### F. Google fails to prove its disclaimer defense to Plaintiffs' implied-warranty claim.

Google next contends that Plaintiffs' warranty claim fails, but its arguments are unavailing.

#### 1. Google does not prove that Plaintiffs or their schools agreed to its cited terms.

First, Google cites only its own terms of service, Mot. at 22, which are not properly before the

Court, as explained in Plaintiffs' opposition to Google's Request for Judicial Notice. Even if they were,

Google does not show that those were the terms to which M.C.'s schools agreed or that were in effect at

the time M.C. used Google's Products. In fact, the terms themselves show they were not, as one is dated

May 22, 2024, and the other is dated October 7, 2025—many years *after* M.C. began using Google's

Products. ¶¶ 17, 189; Dkt. 24-3 at 2, Dkt. 24-4 at 2. Google further fails to prove that those documents

constitute its entire agreement with M.C.'s schools, and the validity of disclaimers must be evaluated in

context of the entire agreement. *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 951

(N.D. Cal. 2018). Plaintiffs allege that Google's terms are "voluminous and sprawling," and the terms

Google cites reference other terms and contain numerous links, the content of which Google did not

produce. ¶ 147. Google thus failed to carry its burden of proving its disclaimer affirmative defense. *See*

*Peguero v. Toyota Motor Sales, USA, Inc*., 2021 WL 2910562, at *6 (C.D. Cal. Apr. 26, 2021)

("Dismissal under [R]ule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant

shows some obvious bar to securing relief on the face of the complaint.").

Further, any purported disclaimer would be unconscionable as applied to Plaintiffs, who allege

that: Google never provided them its terms and prevented Plaintiffs from receiving them, ¶¶ 159, 191,

281; M.C.'s use of Google's Products was required as part of his compulsory education, ¶¶ 6, 20, 34,

199; Google unfairly shifts its burden of safety to children and their parents while preventing them from

protecting themselves, ¶¶ 99, 105–14; Plaintiffs reasonably expected that Google's Products would be

safe, ¶¶ 31, 157, 178, 286; Google markets its Products as safe for all students, ¶¶ 163–79; and the

unduly dangerous design of Google's Products was deliberate and profit-driven, ¶¶ 13, 88–97. *See A&M*

*Produce Co. v. FMC Corp*., 135 Cal. App. 3d 473, 484–85 (Ct. App. 1982) (explaining that

unconscionability "is a flexible doctrine designed to allow courts to directly consider numerous factors which may adulterate the contractual process" such as visibility, oppression, and surprise). Any related fact questions may not be decided at this stage. *See id.*; *Teknekron Customer Info. Sols., Inc. v. Watkins Motor Lines, Inc.*, 1994 WL 11726, *5 (N.D. Cal. Jan. 5, 1994) ("[T]his is not a matter that can be disposed of on a motion to dismiss. Watkins is entitled to present evidence that enforcing Teknekron's purported disclaimer of implied warranties would be unconscionable.").

### 2. Plaintiffs allege more than emotional injury.

Google contends that Plaintiffs cannot recover for emotional harm or related economic loss. But Plaintiffs allege more than emotional harm, as discussed at section III.C.1., *supra*.

### 3. Plaintiffs allege that they are third-party beneficiaries of their schools' contracts.

Google last contends that Plaintiffs have no privity with Google, citing Plaintiffs' allegation that "[t]he terms of service governing Google's Products are between Google and schools. Parents and students are not parties to those contracts." Mot. at 23 (citing ¶ 276). But Plaintiffs allege that they are third-party beneficiaries of those contracts: Google markets, and schools purchase, Google's Products for student use, ¶¶ 20, 31, 46, 189–90, 302, 311; schools use Google's Products for students' benefit, ¶¶ 47, 189; Google knows and intends that students use its Products in the compulsory setting of K–12 education, ¶¶ 5, 27, 46, 53, 302, 311; M.C.'s use of its Products was mandatory, ¶¶ 17, 20, 34, 189, 199; and Plaintiffs were the intended beneficiary of Google's Products, ¶ 460. Plaintiffs have therefore adequately pled the third-party-beneficiary exception to the privity requirement of implied-warranty claims. *See Hawkins v. Shimano N. Am. Bicycle Inc.*, 729 F. Supp. 3d 989, 1026 (C.D. Cal. 2024) ("[T]o be deemed a third-party beneficiary, one need only to have experienced more than an incidental benefit from the contract.").

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Google's Motion in its entirety. To the extent necessary, however, Plaintiffs request leave to amend.

Dated: February 13, 2026

Respectfully submitted,

**EDTECH LAW CENTER PLLC**

By: */s/ Julie U. Liddell*
Julie U. Liddell (*pro hac vice*)
julie.liddell@edtech.law
W. Andrew Liddell (*pro hac vice* forthcoming)
andrew.liddell@edtech.law
904 Rio Grande Street, Suite 100
Austin, Texas 78701
Tel.: (737) 351-5855

Rebecca A. Peterson (241858)
RPeterson@4-justice.com
**GEORGE FELDMAN MCDONALD, PLLC**
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Tel.: (612) 778-9595
Fax: (888) 421-4173

Lori G. Feldman (*pro hac vice* forthcoming)
LFeldman@4-justice.com
Michael Liskow (SBN 243899)
MLiskow@4-Justice.com
**GEORGE FELDMAN MCDONALD, PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel.: (718) 878-6433

Ryan J. Ellersick (Cal Bar No. 357560)
**ZIMMERMAN REED LLP**
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (310) 752-9385

Will Horowitz (Cal. Bar No. 323961)
will@qureshi.law
Omar G. Qureshi (Cal. Bar No. 323493)
omar@qureshi.law
**QURESHI LAW PC**
700 Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: (213) 600-6096

*Counsel for Plaintiffs*