**PERKINS COIE LLP**
Sunita Bali (Bar No. 274108)
*SBali@perkinscoie.com*
505 Howard Street, Suite 1000
San Francisco, California 94105-3204
Telephone: +1.415.344.7000
Facsimile:  +1.415.344.7050

Lauren J. Tsuji (Bar No. 300155)
*LTsuji@perkinscoie.com*
Anna Mouw Thompson (*pro hac vice*)
*AnnaThompson@perkinscoie.com*
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile:  +1.206.359.9000

*Attorneys for Defendant GOOGLE LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN ROE and JANE ROE, on behalf of themselves and their minor child, M.C.,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:25-cv-08927-AMO<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF ITS REQUEST FOR JUDICIAL NOTICE**<br><br>Date:    May 14, 2026<br>Time:    2:00 p.m.<br>Location: 19th Floor, Courtroom 10<br>Judge:    Hon. Araceli Martínez-Olguín |

Exhibits A through D to the Declaration of Sunita Bali are subject to the incorporation by reference doctrine because their authenticity is not questioned and they are central to Plaintiffs' claims. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The contents of these publicly available webpages are also the proper subjects of judicial notice because they are "not subject to reasonable dispute [and] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Accordingly, under either or both exceptions to the general rule that Courts may not consider materials outside the complaint, the Court may consider the Exhibits when deciding Google LLC ("Google")'s Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. 24 ("Motion" or "Mot.").

Plaintiffs' opposition fails. They cannot disavow their own reliance on quotes from the same webpages attached as exhibits to avoid incorporation. And as explained below, many of their arguments manufacture requirements that do not exist or misstate the relevant tests.

Google respectfully asks the Court to grant its Request for Judicial Notice, ECF No. 25 ("RJN") and consider Exhibits A through D in adjudicating Google's Motion.

## I.    ARGUMENT

**A.    The Exhibits are incorporated by reference by the FAC.**

The Exhibits are subject to the incorporation by reference doctrine. Plaintiffs do not question their "authenticity," *Knievel*, 393 F.3d at 1076, as they do not contend that any of the Exhibits are not what Google says they are—accurate copies of Google's publicly available websites. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160–61 (9th Cir. 2012) (explaining what is required to challenge authenticity under incorporation by reference doctrine); *see generally* Plaintiffs' Opposition to Google's Request for Judicial Notice, ECF No. 35 ("RJN Opp.") 2–8. Instead, Plaintiffs' sole rebuttal is that the Exhibits are "not 'the basis of' or 'central to' Plaintiffs' claims." RJN Opp. 4 (quoting *Aledlah v. S-L Distribution Co., LLC*, No. 20-CV-00234, 2020 WL 2927980, at *3 (N.D. Cal. June 3, 2020)). That is simply untrue.

***Exhibit A.*** Plaintiffs downplay their reliance on the webpage attached as Exhibit A as limited to "only one screenshot and a brief quote." *Id*. at 3 (citing FAC ¶172). But in their next

breath, Plaintiffs concede that they rely on Exhibit A to "illustrate[] Google's false and misleading statements about the alleged safety of its products." *Id*. at 3 (citing FAC ¶¶ 163–81). Indeed, Plaintiffs repeatedly assert that Google markets its products "as safe for students of all ages." FAC ¶ 31; *see also id*. ¶ 29 (alleging that Google markets products as "safe for use by students"), 51 ("safe for use by students in the compulsory setting of K-12 education"), 53 ("safe for use by students"), 171 ("safe [for the purpose of] giv[ing] children access to the internet"). That assertion, in turn, is central to many of Plaintiffs' causes of action. *See, e.g.*, FAC ¶ 457 (basing UCL claim on assertion that "Google . . . misleadingly markets [its products] as safe"); *see also id*. ¶ 311 (basing design defect claim on assertion that "Google markets, promotes, and advertises its Products for use by K–12 students and as safe for that purpose").[1]

Thus, Exhibit A supports a key premise to Plaintiffs' claims. Indeed, the situation here is analogous to that in *Bounthon v. Procter & Gamble Co.*, 2024 WL 4495501 (N.D. Cal. Oct. 15, 2024), where this Court found various webpages and articles incorporated by reference because they were "the source of many of Plaintiffs' allegations concerning the presence of PFAS in tampons and their harmfulness, which underpins Plaintiffs' theory of deception." *Id.* at *6; *see also In re Lucid Grp., Inc. Sec. Litig.*, 2024 WL 3745605, at *5 (N.D. Cal. Aug. 8, 2024) (Martínez-Olguín, J.) (incorporating by reference various documents that were "the source of several statements Lead Plaintiff alleges were false and misleading," because, "[a]s such, the documents form the basis of Lead Plaintiff's claims"). This case is also analogous to Plaintiffs' cited authority of *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), where the Ninth Circuit incorporated a report even though the complaint included only a "single brief quotation [without attribution]," because that quote "represent[ed] another occasion when [defendant] may have misrepresented the benefits of" the product at issue, and so the document "form[ed] the basis" of the claims. *Id*. at 1005. In contrast, this case is nothing like *Aledlah*,

---

[1] These citations show that Plaintiffs' allegations regarding Google's purported marketing about the safety of its products are central to their claims even if Plaintiffs are taken at their word that their claims "do not sound in fraud." RJN Opp. at 3; *but see* FAC ¶¶ 325 ("Google committed an act of oppression, fraud, or malice"); 343 (same); 368 (same), 393 (same), 422 (same).

where the plaintiff's wage-and-hours claims were "premised on a misclassification theory under California's Labor Code and . . . not reliant on the terms of any of the agreements [sought to be incorporated]." 2020 WL 2927980, at *3.

Here, as in *Khoja*, *Bounthon*, and *Lucid Group*, and unlike in *Aledlah*, Plaintiffs rely on Exhibit A as support for their own theory of liability. The Court may therefore consider Exhibit A as incorporated by the complaint when deciding Google's Motion. Specifically, although the conclusory assertion fails on its own because it is wholly unsupported by any *factual* allegations, the Court may consider the fact that Exhibit A directly contradicts Plaintiffs' bare assertion that Google's algorithms pushed M.C. towards pornographic content *because* he was an 11-year-old boy. *See* Mot. 3–4; *see also Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1135 n.1 (9th Cir. 2013) (recognizing that where a complaint makes "conclusory allegations that are contradicted by documents referred to [or incorporated] in the complaint," a court may decline to accept such conclusory allegations as true) (citation omitted); *In re Eventbrite, Inc. Sec. Litig.*, No. 5:18-CV-02019-EJD, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020) (rejecting the same "oversimplif[ication]" of *Khoja* that Plaintiffs press here, explaining that the case "does not prevent a defendant from using the doctrines of judicial notice or incorporation by reference to create factual disputes with a plaintiff's *conclusory* allegations") (emphasis in original).

***Exhibit B.*** Plaintiffs first contend that "the FAC references 'Google's policies' generally, not [the Google Workspace for Education Terms of Service ("GWFE Terms") attached as Exhibit B] specifically[.]" RJN Opp. 3-4. But even if the FAC doesn't specifically "reference" the GWFE Terms, Plaintiffs cannot credibly dispute that the FAC quotes them. Plaintiffs do not point to any other Google policies using the phrase "school official," which is quoted at FAC ¶¶ 159, 281, and 283, or discussing how schools are "responsible for any consents and notices required to permit" Google's collection and use of student information—language quoted at FAC ¶ 280. It does not matter that these words represent a small portion of the total word count in the GWFE Terms (RJN Opp. 4), that Plaintiffs do not seek to enforce the GWFE Terms (*id.*), or that Plaintiffs dispute whether the test for incorporation is met while plaintiffs in some of Google's cases

-3-

conceded it was (*id.* at 3, 6, 7). What matters is that these quotes are indisputably central to Plaintiffs' claims—specifically, their Section 1983 claim—because Plaintiffs rely on them to argue that Google is a state actor. *See, e.g.*, Plaintiffs' Opposition to Google's Motion, ECF No. 34 ("Opp.") 17, 18–19 (repeatedly pointing to Google's purported status as a "school official" to oppose dismissal of Section 1983 claim, asserting "that claimed status *is central* to Google's efforts to avoid parental notice or involvement in their children's use of its Products") (emphasis added). The Court may therefore consider Exhibit B as it is central to Plaintiffs' claims.

Plaintiffs protest that "any provision discussing Google as a 'school official' is wholly unrelated to the purpose for which Google seeks incorporation of the TOS, namely, to invoke its disclaimers as a defense to Plaintiffs' claims." RJN Opp. 5. But once incorporated, a court "treat[s] [a document] as part of the complaint." *Davis*, 691 F.3d at 1160 (citation omitted). This means that "both parties—and the Court—are free to refer to *any* of its contents." *City of Roseville Employees' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1107 (E.D. Wash. 2013) (emphasis added), *aff'd*, 691 F. App'x 393 (9th Cir. 2017). So, the Court can consider Exhibit B, and the implied warranty and third-party beneficiary disclaimers contained therein when deciding Google's motion to dismiss Plaintiffs' implied-warranty claim. *See* Mot. 22.

***Exhibits C and D.*** Similarly, even if Plaintiffs do not specifically reference the Google Terms of Service ("Google Terms") attached as Exhibit C, Plaintiffs allege that "*one* of Google's terms of use mandates that all "disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California," FAC ¶ 45 (emphasis added), and do not dispute that the Google Terms contains that very language. Plaintiffs rely on that language as the basis for this Court's jurisdiction over this case, making it central to their claims. *See Feng v. Lunaphore Techs., SA*, 2025 WL 1953228, at *3 & n.2 (S.D. Cal. July 16, 2025) (incorporating document "referenced" but "not attached" to complaint because "claims are dependent on the" forum selection clause which designated the exclusive place of jurisdiction); *Mitsui O.S.K. Lines, Ltd. v. Swiss Shipping Line S.A.L.*, 2018 WL 1156771, at *3 (N.D. Cal. Mar. 5, 2018) (incorporating

documents relied upon to support assertion of jurisdiction). Accordingly, the Court may also consider Exhibit C.

Moreover, Plaintiffs invoke "Google's voluminous and sprawling terms and policies" to support their blanket assertion that Google fails to "warn that its Products are inherently dangerous for use by K-12 students by design" for each of the various products they challenge. FAC ¶¶ 146–47; *see also id*. ¶ 5 (listing challenged "Products"). Exhibit B covers GWFE, while Exhibit C covers the other challenged Products—as made clear by Exhibit D, which is linked in Exhibit C. Accordingly, because Google's alleged failure to warn is the basis for many of Plaintiffs' causes of action, *see id*. ¶¶ 332–36, 339, 342, 379–80, 385–89, the terms necessarily "underpin[] Plaintiffs' theory of" liability. *Bounthon*, 2024 WL 4495501, at *6 (incorporating various webpages and articles because they were "the source of many of Plaintiffs' allegations concerning the presence of PFAS in tampons and their harmfulness, which underpins Plaintiffs' theory of deception"). Plaintiffs cannot have it both ways: they cannot hinge their claims on references to Google's policies without attribution when convenient, while avoiding those policies when inconvenient. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (incorporating document "not explicitly refer[ed] to" in pleadings because "it contain[ed] allegations" that were "integral" to the claims); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (same). The incorporation by reference doctrine prevents Plaintiffs from cherry picking language from documents "that support[s] their claims, while omitting portions of those very documents that weaken–or doom–their claims." *M.D. v. Google LLC*, 2025 WL 2710095, at *2 (N.D. Cal. Sept. 23, 2025) (quoting *Khoja*, 899 F.3d at 1002).

Accordingly, Exhibits C and D should be incorporated by reference and considered as part of the FAC. As with Exhibit B, the Court may consider them when deciding whether to dismiss Plaintiffs' implied warranty claims.

**B.     The Exhibits may be judicially noticed.**

It is also proper for the Court to take judicial notice of Exhibits A through D since their contents are "not subject to reasonable dispute [and] . . . can be accurately and readily determined

from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Plaintiffs do not dispute that Exhibits A through D accurately represent the content of various Google webpages. Nor could they, given that their accuracy can easily be confirmed by visiting the URLs identified in the Bali Declaration. That ends the inquiry as to judicial notice.

Instead, Plaintiffs first object that "Google fails to specify which facts within each exhibit it wants noticed." RJN Opp. 4. But, unlike in the cases Plaintiffs cite, *see id.*, Google is not asking the Court to take judicial notice of the truth of particular factual statements; it is instead asking the Court to take judicial notice of the existence and content of various webpages—as courts regularly do. *See, e.g.*, *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1025 (N.D. Cal. 2014) (judicially noticing, in their entirety, terms of service and privacy policies on publicly accessible websites); *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 868–69 (N.D. Cal. 2022) (same) (citing cases); *Battle v. Taylor James, LLC*, 607 F. Supp. 3d 1025, 1039–40 (C.D. Cal. 2022) (taking judicial notice of defendant's blog); *see also Blake v. Canoo Inc.*, 2022 WL 22919489, at *1 (C.D. Cal. July 19, 2022) (cited at RJN Opp. 8 and taking judicial notice of the "existence and contents" of an SEC filing) (citation omitted). Regardless, Google's Motion clearly identifies the particular content from Exhibits A through D that is relevant to its arguments. *See* Mot. 4 (pointing to existence of statements in Exhibit A regarding safe filters); Mot. 22 (pointing to existence of waivers appearing at Exhibits B and C and relevance of Exhibit C to Google Search, Google Chrome, and Chrome OS as made clear by Exhibit D); *see also Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 984 (N.D. Cal. 2010) (judicially noticing terms of use and warranties on websites "for the fact that they exist" which is "not reasonably in dispute").

Plaintiffs next repeat their arguments that Exhibits A through D are not the basis for or central to their claims. RJN Opp. 8–9. But unlike with the incorporation by reference doctrine, there is no requirement that Google show that the exhibits are the basis of or central to Plaintiffs' claims for judicial notice. (Regardless, Exhibits A through D are, in fact, central to Plaintiffs' claims. *See supra* 2–5.)

3:25-CV-08927-AMO
REPLY IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE

Plaintiffs likewise crib from incorporation by reference case law to argue that Google is relying on Exhibits A through D to dispute "well-pled allegations." RJN Opp. 9. But this is not a consideration for judicial notice. *See Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 905 (N.D. Cal. 2019) (only discussing whether defendants "use these documents to create a disputed version of the facts alleged and/or to create a defense" in the context of incorporation by reference). Regardless, as explained above, Google is asking the Court to take judicial notice of the existence and content of various webpages, which is all that is necessary to support Google's arguments for dismissal. *See Tritz*, 721 F.3d at 1135 n.1 (considering the existence of materials that contradicted complaint's wholly conclusory allegations without assuming the truth of those materials); *Datel*, 712 F. Supp. 2d at 984 (considering the existence of terms of use and warranties on websites "for the fact that they exist").

## II.    CONCLUSION

For the reasons discussed herein and in Google's RJN, Google respectfully requests that the Court grant its request and consider Exhibits A through D in adjudicating its Motion.

Dated:  March 6, 2026                                      **PERKINS COIE LLP**


By: */s/ Sunita Bali*
     Sunita Bali (Bar No. 274108)
     Lauren J. Tsuji (Bar No. 300155)
     Anna Mouw Thompson (*pro hac vice*)


*Attorneys for Defendant GOOGLE LLC*