**PERKINS COIE LLP**
Sunita Bali (Bar No. 274108)
*SBali@perkinscoie.com*
505 Howard Street, Suite 1000
San Francisco, California 94105-3204
Telephone: +1.415.344.7000
Facsimile:  +1.415.344.7050

Lauren J. Tsuji (Bar No. 300155)
*LTsuji@perkinscoie.com*
Anna Mouw Thompson (*pro hac vice*)
*AnnaThompson@perkinscoie.com*
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile:  +1.206.359.9000

*Attorneys for Defendant GOOGLE LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOHN ROE and JANE ROE, on behalf of themselves and their minor child, M.C.,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:25-cv-08927-AMO<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE AND TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>Date:       May 14, 2026<br>Time:       2:00 p.m.<br>Location: 19th Floor, Courtroom 10<br>Judge:     Hon. Araceli Martinez-Olguin |

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION.................................................................................................................1

II.   ARGUMENT .......................................................................................................................1

    A.    The "explanations" from Gemini should be stricken under Rule 12(f). ............................1

    B.    Plaintiffs' state-law claims (counts 1–5, 7–8) are barred by Section 230. ........................2

        1.    Google is an interactive computer service provider...............................................2

        2.    Plaintiffs' claims treat Google as a publisher of third-party content. ..................3

        3.    Google did not create the allegedly harmful content at issue................................5

        4.    Section 230(c)(2)(B) also precludes Plaintiffs' state-law claims.........................7

    C.    M.C.'s products-liability claims are not legally viable under California law. ..................8

        1.    Plaintiffs do not allege the requisite physical harm. .............................................8

        2.    Product-liability claims cannot arise from exposure to content or ideas. .............9

    D.    The Parent Plaintiffs fail to state a Fourteenth Amendment claim. ................................10

        1.    Google is not a state actor. ..................................................................................10

        2.    The Plaintiff Parents have not shown a Fourteenth Amendment violation.........11

        3.    The Plaintiff Parents' Constitutional claim is time-barred................................11

    E.    Plaintiffs' UCL claim fails. ............................................................................................12

        1.    Plaintiffs are not entitled to equitable UCL relief. .............................................12

        2.    Plaintiffs fail to state a viable UCL claim. .........................................................12

    F.    Plaintiffs' implied warranty claims fail...........................................................................13

        1.    Plaintiffs cannot escape the privity requirement as third-party beneficiaries. ....................................................................................................13

        2.    Plaintiffs cannot overcome Google's waivers of implied warranty....................14

        3.    Plaintiffs' injuries cannot form the basis for an implied warranty claim............15

III.  CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988)........................................................................................ 3

*Anderson v. Apple Inc.*,
500 F. Supp. 3d 993 (N.D. Cal. 2020) ...................................................................... 14

*Anderson v. TikTok, Inc.*,
116 F.4th 180 (3d Cir. 2024)..................................................................................... 6, 7

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009).................................................................................. 5, 7

*Belanus v. Clark*,
796 F.3d 1021 (9th Cir. 2015) ................................................................................... 11

*Benedict v. Google LLC*,
No. 23-cv-02392, 2024 WL 3427161 (D. Ariz. July 16, 2024).................................. 6

*Bogard v. TikTok Inc.*,
No. 24-cv-03131, 2025 WL 604972 (N.D. Cal. Feb. 24, 2025) ................................ 9

*Brannum v. Overton Cnty. Sch. Bd.*,
No. 2:03-0065, 2006 WL 8445313 (M.D. Tenn. June 20, 2006) ........................... 10

*Breathitt Cty. Sch. Dist. v. Meta Platforms Inc.*,
No. 4:23-cv-01804, 2026 WL 587754 (N.D. Cal. Feb. 9, 2026) .............................. 4

*Cal. Parents for the Equalization of Educ. Materials v. Torlakson*,
973 F.3d 1010 (9th Cir. 2020)................................................................................... 11

*Cal. Sansome Co. v. U.S. Gypsum*,
55 F.3d 1402 (9th Cir. 1995)..................................................................................... 11

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) ..................................................................................... 3

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
590 F.3d 806 (9th Cir. 2010)................................................................................ 10, 11

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008)................................................................................... 13

*Crown Cell Inc. v. Ecovacs Robotics Inc.*,
No. 21-CV-07890, 2022 WL 4087512 (N.D. Cal. Sept. 6, 2022) ......................................... 14

*Doe 1 v. Twitter, Inc.*,
148 F.4th 635 (9th Cir. 2025) ...................................................................................................... 6

*Doe (K.B.) v. Backpage.com, LLC*,
768 F. Supp. 3d 1057 (N.D. Cal. 2025) ...................................................................................... 7

*Doe v. WebGroup Czech Republic, a.s.*,
767 F. Supp. 3d 1009 (C.D. Cal. 2025) ...................................................................................... 6

*Ellsworth v. U.S. Bank, N.A.*,
908 F. Supp. 2d 1063 (N.D. Cal. 2012) ...................................................................................... 2

*Erlich v. Menezes*,
21 Cal. 4th 543 (1999) ..................................................................................................... 8, 9, 15

*Est. of Bride by & through Bride v. Yolo Techs., Inc.*,
112 F.4th 1168 (9th Cir. 2024) ............................................................................................... 3, 4

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008)............................................................................................. 5, 6, 7

*Fields v. Palmdale Sch. Dist. (PSD)*,
447 F.3d 1187 (9th Cir. 2006)................................................................................................... 11

*GMC Semitech Co. v. Cap. Asset Exch. and Trading, LLC*,
No. 24-cv-09451, 2025 WL 1236677 (N.D. Cal. Apr. 29, 2025)............................................ 13

*Google LLC v. Equustek Sols. Inc.*,
No. 5:17-cv-04207, 2017 WL 5000834 (N.D. Cal. Nov. 2, 2017) ........................................... 5

*Hawkins v. Shimano N. Am. Bicycle Inc.*,
729 F. Supp. 3d 989 (C.D. Cal. 2024) ..................................................................................... 13

*Hernandez-Silva v. Instructure, Inc.*,
No. 2:25-cv-02711, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) .................................... 10, 11

*Herrick v. Grindr LLC*,
765 F. App'x 586 (2d Cir. 2019) ................................................................................................ 4

*Hughes v. Apple, Inc.*,
723 F. Supp. 3d 693 (N.D. Cal. 2024) .................................................................................... 8, 9

*In re Google Phone Litig.*,
No. 10-CV-01177, 2012 WL 3155571 (N.D. Cal. Aug. 2, 2012)............................................ 14

-iii-

*In re NVIDIA GPU Litig.*,
No. C 08-04312, 2009 WL 4020104 (N.D. Cal. Nov. 19, 2009)...........................................14

*In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*,
753 F. Supp. 3d 849 (N.D. Cal. 2024) ....................................................................................8

*James v. Meow Media, Inc.*,
300 F.3d 683 (6th Cir. 2002)..................................................................................................10

*Jimenez v. Superior Court*,
29 Cal. 4th 473 (2002) ..........................................................................................................8, 9

*K.J. by & through Johnson v. Jackson*,
127 F.4th 1239 (9th Cir. 2025) ..............................................................................................12

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016)..................................................................................................5

*Kwan v. Mercedes-Benz of N. Am., Inc.*,
23 Cal. App. 4th 174 (1994) ..................................................................................................15

*L.W. through Doe v. Snap Inc.*,
675 F. Supp. 3d 1087 (S.D. Cal. 2023) ...................................................................................4

*Lemmon v. Snap Inc.*,
995 F.3d 1085 (9th Cir. 2021)...............................................................................................4, 5

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
925 F.3d 1263 (D.C. Cir. 2019) ...............................................................................................6

*O'Handley v. Weber*,
62 F.4th 1145 (9th Cir. 2023) .................................................................................................10

*O'Kroley v. Fastcase, Inc.*,
831 F.3d 352 (6th Cir. 2016)....................................................................................................6

*Parents for Priv. v. Barr*,
949 F.3d 1210 (9th Cir. 2020)................................................................................................11

*Park-Kim v. Daikin Indus., Ltd*,
No. 2:15-cv-09523, 2016 WL 5958251 (C.D. Cal. Aug. 3, 2016) .........................................14

*Parker v. Google, Inc.*,
422 F. Supp. 2d 492 (E.D. Pa. 2006) .......................................................................................6

*Patterson v. Meta Platforms, Inc.*,
239 N.Y.S.3d 726 (N.Y. App. Div. 2025) ................................................................................7

-iv-

*Peltier v. Charter Day School, Inc.*,
    37 F.4th 104 (4th Cir. 2022) ...................................................................................... 10

*Phillips v. Apple Inc.*,
    725 F. App'x 496 (9th Cir. 2018) ............................................................................... 12

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) .................................................................................................... 9

*Q.J. v. PowerSchool Holdings, LLC*,
    No. 23 C 5689, 2025 WL 2410472 (N.D. Ill. Aug. 20, 2025) ................................... 10

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) .................................................................................... 13

*Smith v. Intel Corp.*,
    745 F. Supp. 3d 853 (N.D. Cal. 2024) ....................................................................... 13

*Snell v. United Specialty Ins. Co.*,
    102 F.4th 1208 (11th Cir. 2024) (Newsom, J. concurring) .......................................... 2

*Teknekron Customer Info. Sols., Inc. v. Watkins Motor Lines, Inc.*,
    No. C-93-03422, 1994 WL 11726 (N.D. Cal. Jan. 5, 1994) ...................................... 15

*TikTok, Inc. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*,
    578 P.3d 640 (Nev. 2025) ............................................................................................. 4

*Tovar v. City of San Jose*,
    No. 5:21-CV-02497, 2021 WL 6126931 (N.D. Cal. Dec. 28, 2021) .......................... 10

*Valentine v. Crocs, Inc.*,
    783 F. Supp. 3d 1204 (N.D. Cal. 2025) ..................................................................... 13

*Watkins v. MGA Ent., Inc.*,
    574 F. Supp. 3d 747 (N.D. Cal. 2021) ....................................................................... 14

*Winter v. G.P. Putnam's Sons*,
    938 F.2d 1033 (9th Cir. 1991) .............................................................................. 9, 10

*Zango, Inc. v. Kaspersky Lab, Inc.*,
    568 F.3d 1169 (9th Cir. 2009) ................................................................................. 7, 8

*Ziencik v. Snap, Inc.*,
    No. CV 21-7292, 2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ................................... 9

-v-

**STATUTES**

42 U.S.C. § 1983 ................................................................................................................ 11

47 U.S.C. § 230 .......................................................................................................... passim

**OTHER AUTHORITIES**

First Amendment ................................................................................................................. 7

Fourteenth Amendment ................................................................................................. 10, 11

Fed. R. Civ. P. 11 ................................................................................................................ 2

Fed. R. Civ. P. 12 ................................................................................................................ 2

## I.    INTRODUCTION

Plaintiffs' Opposition underscores the fundamental problem with this lawsuit: their claims seek to hold Google liable for M.C.'s addiction to pornography merely because it supplied a Chromebook and educational software to M.C.'s school, which M.C. used to access the internet. This sweeping and unprecedented theory of liability fails as a matter of law.

To start, Plaintiffs do not plead any facts to support their baseless assertion that Google Search recommended pornographic content to M.C. because of his age, and their unverified allegations from Gemini should be stricken.

More broadly, Plaintiffs' theory of liability is squarely foreclosed by Section 230 of the federal Communications Decency Act ("Section 230"). Google is immune from suit because M.C. ultimately seeks to hold Google responsible for allowing harmful content to reach M.C.—a quintessential "publisher" function. 47 U.S.C. § 230(c)(1). The FAC also establishes that Google provides "others" with the "technical means" to restrict access to [objectionable] material, 47 U.S.C. § 230(c)(2)(B), such that Plaintiffs' challenge of Google's existing tools as inadequate separately entitles Google to immunity.

Even if they were not fundamentally barred by Section 230, Plaintiffs' claims fail for additional reasons. Their product-liability claims cannot proceed because Plaintiffs seek to recover for (1) non-physical injuries (2) based on M.C.'s exposure to harmful ideas and expression. M.C.'s Parents' constitutional claim fails because Google did not engage in state action, they have no constitutional right to dictate the technology used in a public classroom, and the claim is time-barred in any event. And their claims for violation of California's Unfair Competition Law ("UCL") and breach of implied warranty likewise suffer fundamental flaws.

Google respectfully asks the Court to dismiss the FAC in its entirety.

## II.    ARGUMENT

**A.    The "explanations" from Gemini should be stricken under Rule 12(f).**

Plaintiffs do not dispute that they rely exclusively on Gemini—a generative artificial intelligence model—to support their false allegation that Google intentionally recommended pornographic content to M.C., and they concede that they took no steps to "independently verify

the accuracy" of these allegations. Opp. 2–4. But Rule 11 requires Plaintiffs to plead only facts that have "evidentiary support." Fed. R. Civ. P. 11(b)(3). Plaintiffs' failure to show that they have "verified the . . . accuracy" of their AI-generated allegations means these allegations are not based on well-pleaded facts, are not entitled to any presumption of truth, and should be stricken under both Rule 12(f) and Section H(4) of this Court's Standing Order.[1]

**B.      Plaintiffs' state-law claims (counts 1–5, 7–8) are barred by Section 230.**

Despite Plaintiffs' every effort to get around Section 230, Google is immune from their claims under both Section 230(c)(1) and Section 230(c)(2)(B).

**1.      Google is an interactive computer service provider.**

Section 230(c)(1) protects any "information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." 47 U.S.C. § 230(f)(2). Here, the FAC collectively defines Chromebooks, the ChromeOS operating system, the Chrome browser, Google Search; Google Workspace for Education ("GWFE"), and the Admin Console as the "Products," FAC ¶ 5, and objects to those "Products" *because* they allow students to access the internet and allegedly "promote maximally 'engaging' content and communications," *see id.* ¶¶ 7, 10–13, 18–20, 51–52, 54–64. Plaintiffs have thus pleaded themselves out of court with respect to the first element. *See Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012) (dismissal can be based on affirmative defense established on "face of the complaint").

Plaintiffs' Opposition mischaracterizes Google's Motion by suggesting that it only addresses this element as to the Chrome Browser and thus "waived" its arguments as to the remaining Products. Opp. 5. This is incorrect, as Google's Motion plainly argued that it qualifies as an interactive computer service provider as to all of the Products. Mot. 7. Any lack of specificity is a problem of Plaintiffs' own making, as it was their choice to plead deficiencies in "Google's Products" in the aggregate. *See, e.g.*, FAC ¶¶ 6–12, 14, 15.

---

[1] Even if Judge Newsom's concurrence does not favor outright prohibition of generative AI, the point stands: the risk of AI manipulation must be addressed, including through "full disclosure of one's research process," which Plaintiffs failed to provide. *Snell v. United Specialty Ins. Co.*, 102 F.4th 1208, 1232 (11th Cir. 2024) (Newsom, J. concurring); Mot. 5–6.

As for Plaintiffs' assertion that the Admin Console "does not provide internet access," Opp. 6, Plaintiffs' FAC alleges the opposite. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings . . . , unless amended, are considered judicial admissions conclusively binding on the party who made them."); FAC ¶¶ 5, 7, 10–13, 18–20, 51–52, 54–64. Regardless, Section 230 does not limit "interactive computer service" to those that provide internet access; rather, the definition extends to "access software," which in turn includes *any* "software . . . or enabling tools that . . . filter, screen, allow, or disallow content." 47 U.S.C. § 230(f)(2), (f)(4)(A). The FAC makes clear that the Admin Console allows schools to filter content by "deploy[ing] restrictions and controls." FAC ¶ 152; *see also id.* ¶ 202 (alleged circumvention of "school-implemented filters and restrictions on internet access and online content"). Thus, Google is an access software provider (and, therefore, an interactive computer service) with respect to the Admin Console. 47 U.S.C. § 230(f)(4)(A).

Plaintiffs' brief next frames GWFE as "a suite of applications used by students." Opp. 6. But this glosses over allegations that GWFE is a "*cloud-based* suite of apps" that "run within the Chrome browser" and "persistently feature the Chrome browser's URL bar" allowing a user to "navigate the internet." FAC ¶¶ 56, 62–63. So, GWFE, too, is a "system that provides access to the Internet." 47 U.S.C. § 230(f)(2).

Google thus is an interactive computer service to all six "Products."

### 2.    Plaintiffs' claims treat Google as a publisher of third-party content.

Section 230(c)(1)'s second element asks whether a plaintiff seeks to treat the defendant as a "publisher or speaker." This determination requires the Court to look beyond the labels in a complaint to the ultimate "theory of liability." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 740 (9th Cir. 2024). If the asserted duty requires the defendant to "moderate content to fulfill its duty," or otherwise "springs . . . from [the defendant's] status as a publisher," then immunity attaches. *Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1177 (9th Cir. 2024). Plaintiffs' claims all fault Google because its Products "grant students virtually unrestricted access to the internet." FAC ¶¶ 7, 119, 140.

-3-

Plaintiffs apparently concede that their claims regarding Google Search treat Google as a publisher of third-party content. Opp. 6; *see also* FAC ¶¶ 51–52. As for the rest of the Products, Plaintiffs first object that Google misunderstands their theory, and that they do not claim Google "should have prevented or limited access to harmful content posted by others." *Id.* But that is precisely their theory of liability: Plaintiffs seek to hold Google liable for not designing "its products in a way that prevents children like M.C. from being exposed to online pornography," FAC ¶ 29, and for failing to "limit[] internet access to a very controlled environment," *id.* ¶ 120. These allegations plainly contemplate that Google should have taken some action to prevent access to specific third-party content, and thus squarely implicate Section 230(c)(1). *See, e.g., Herrick v. Grindr LLC*, 765 F. App'x 586, 590 (2d Cir. 2019).

Plaintiffs' revised theory, which they offer for the first time in their Opposition, still treats Google as a publisher. Plaintiffs now insist that Google's Products are deficient because they provided M.C. with "*broad* internet access" without product features that would make the Products "safe." *See* Opp. 6-7. This only begs the question: Safe from what? The answer is clear: Safe from encounters with pornography. FAC ¶¶ 7, 16, 18, 25, 29, 51. Plaintiffs' theory of liability still "[a]t root . . . attempt[s] to hold [Google] responsible for [third-party] speech." *Bride*, 112 F.4th at 1179–80; *L.W. through Doe v. Snap Inc.*, 675 F. Supp. 3d 1087, 1095, 1097 (S.D. Cal. 2023) (dismissing claims even where plaintiffs maintained that product could be "made safer without altering third-party content" by altering design features). That Plaintiffs' ultimate theory of liability is based on preventing access to specific types of third-party content distinguishes this case from those allowing feature-based claims. *See, e.g., Lemmon v. Snap Inc.*, 995 F.3d 1085, 1092–93 (9th Cir. 2021) (claims did not treat defendant as a publisher where plaintiffs objected to a social media feature that rewarded a user for going faster than 100 miles per hour); *Breathitt Cty. Sch. Dist. v. Meta Platforms Inc.*, No. 4:23-cv-01804, 2026 WL 587754, at *3 (N.D. Cal. Feb. 9, 2026) (same where the "core theory of injury . . . focuse[d] on the impact of compulsive use itself, irrespective of third-party content"); *TikTok, Inc. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 578 P.3d 640, 651 (Nev. 2025) (same where claims "challenge[d] the

design features that TikTok implements to keep users on the platform as long as possible, no matter the type of third-party content that may appear in a user's feed").

Finally, Plaintiffs insist that they can avoid treating Google as a publisher by proposing features that don't require *Google* to specifically look at third-party content. Opp. 7-8. Not so. Ninth Circuit case law is clear that "publishing functions" encompass not only moderating or editing content, but also "disseminating . . . content." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016) ("Just as Yelp is immune from liability under the CDA for posting user-generated content on its own website, Yelp is not liable for disseminating the same content in essentially the same format to a search engine . . . ."); *Barnes*, 570 F.3d at 1104 ("[E]veryone who takes part in the publication, as in the case of the owner, editor, printer, vendor, or even carrier of a newspaper is charged with publication."); *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1166 (9th Cir. 2008) (recognizing immunity for those acting as a "passive transmitter of information provided by others"). Ultimately, however they seek to frame it, Plaintiffs are plainly arguing that Google should have done more to ensure that M.C. did not encounter specific harmful third-party content. Accordingly, this is not a case where the alleged duty violated is "fully independent of [defendants'] role in monitoring or publishing third-party content." *Lemmon*, 995 F.3d at 1092–93.

**3.    Google did not create the allegedly harmful content at issue.**

Plaintiffs do not dispute that a third party created the pornographic content M.C. encountered. Mot. 10; Opp. 9. Nevertheless, Plaintiffs contend that Google is an "information content provider" merely because Google designed the *algorithm* used to deliver search results to M.C. via Google Search. Opp. 9–11. Plaintiffs are wrong.

An information content provider is a "person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet." 47 U.S.C. § 230(f)(3). Plaintiffs do not contend that Google took any part in creating or developing the pornographic content M.C. encountered. And courts have long recognized that Google is not a creator or developer of third-party content it returns as search results. *See, e.g.*, *Google LLC v. Equustek Sols. Inc.*, No. 5:17-cv-04207, 2017 WL 5000834, at *3 (N.D. Cal. Nov. 2, 2017);

*Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1270–71 (D.C. Cir. 2019); *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 354–355 (6th Cir. 2016); *Benedict v. Google LLC*, No. 23-cv-02392, 2024 WL 3427161, at *5 (D. Ariz. July 16, 2024); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006); *see also Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 646 (9th Cir. 2025) (noting that the Ninth Circuit "predicted" in *Roommates.com* that "ordinary search engines like Google . . . would be entitled to [Section] 230 immunity").

Plaintiffs ask this Court to nevertheless conclude that Google is an information content provider as to Search, pointing to *Anderson v. TikTok, Inc.*, 116 F.4th 180 (3d Cir. 2024). There, the Third Circuit allowed claims to proceed against TikTok after its algorithm recommended a "Blackout Challenge" video on a user's "For You Page" and led to her death. *Id.* at 182. This is unavailing for several reasons:

**First,** Plaintiffs cannot rely on *Anderson* because they do not allege *any* facts to support their theory that Google recommended pornography to M.C. based on his age. Plaintiffs' Opposition does not even attempt to correct this glaring defect. *See* Opp. 2–4; *see also* Dkt. No. 24-2 (describing default *filtering* of inappropriate content for students).

**Second,** *Anderson* is inapplicable because the Third Circuit "reach[ed] [its] conclusion specifically because TikTok's promotion of a Blackout Challenge video on [the user's] FYP was not contingent upon *any* specific user input." 116 F.4th at 184 n.12 (emphasis added). Here, M.C. initiated his own searches and Plaintiffs never suggest that Google Search auto-populates anything like TikTok's "For You Page." FAC ¶¶ 18, 29.

**Third,** binding Ninth Circuit law requires Plaintiffs to show that Google "contributes materially to the alleged illegality of the conduct." *Roommates.com,* 521 F.3d at 1168. Plaintiffs fail to do so here. Even their unsupported allegation that Google's Search algorithm recommends content to maximize user "engagement," FAC ¶¶ 79-85, describes an algorithm that recommends pornography based on content-neutral parameters driven by user behavior. Nowhere do Plaintiffs allege facts showing that Google designed its algorithm to recommend pornography to students, nor can they. *See, e.g., Doe v. WebGroup Czech Republic, a.s.*, 767 F. Supp. 3d 1009, 1020 (C.D.

Cal. 2025) (recognizing "long-standing precedent that" platforms do not "lose Section 230 immunity" when implementing algorithms that "respond solely to how users act online").

**Fourth,** *Anderson* is unpersuasive. Other courts have recognized the absurdity of the opinion's apparent conclusion "that Section 230 immunity is mutually exclusive with First Amendment protection." *Doe (K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1063 (N.D. Cal. 2025). To strip businesses of Section 230 immunity because they are "*also* protected by the First Amendment . . . would effectively render the core of Section 230 a nullity." *Id.*; *see also Patterson v. Meta Platforms, Inc.*, 239 N.Y.S.3d 726, 734 (N.Y. App. Div. 2025) ("Of course, section 230 immunity and First Amendment protection are not mutually exclusive . . . .").

The allegedly harmful content at issue was provided by a third party. Google was "merely a passive conduit" and is thus immune from suit. *Roommates.com*, 521 F.3d at 1172.

### 4. Section 230(c)(2)(B) also precludes Plaintiffs' state-law claims.

Plaintiffs' claims are independently barred because they seek to hold Google liable on account of "action taken to enable or make available to . . . others the technical means to restrict access to [objectionable] material." 47 U.S.C. § 230(c)(2)(B). Section 230(c)(2)(B) sweeps even more broadly than Section 230(c)(1), *Barnes*, 570 F.3d at 1100, and "immunize[s] any action taken to enable or make available to others" content filtering tools, *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 (9th Cir. 2009) (emphasis added).

Plaintiffs argue that Section 230(c)(2)(B) is limited to challenges to "decisions around identification or filtering of content," Opp. 12, but that argument has no basis in the statutory text and is foreclosed by Ninth Circuit precedent. On its face, the statute immunizes "*any* action taken to enable or make available . . . the technical means to restrict access to" material that "the provider or user considers to be . . . objectionable." 47 U.S.C. § 230(c)(2)(A), (B) (emphasis added). That includes Google's provision of the administrative tools that Plaintiffs challenge as inadequate because those tools offer the "technical means to restrict access to" material that the school finds objectionable. *See, e.g.*, FAC ¶¶ 10, 100–104, 107. Indeed, in *Zango*, the Ninth Circuit affirmed that Section 230(c)(2)(B) applies to malware-blocking tools, even though malware is not "defamatory or obscene." 568 F.3d at 1174. Further, the plaintiff could not evade

Section 230(c)(2)(B) by arguing that those tools should have given the customer, as opposed to the software developer, the ability to determine what qualifies as malware. *Id.* at 1176–77 (noting that the statutory text applies to software configurable by both "providers" and "others").

Thus, even if Plaintiffs' state-law claims survived under Section 230(c)(1), which they should not, they fail under Section 230(c)(2)(B).

**C.    M.C.'s products-liability claims are not legally viable under California law.**

Plaintiffs' product-liability claims fail not only under Section 230, but also under California law.

### 1.    Plaintiffs do not allege the requisite physical harm.

Plaintiffs do not cite a single California case permitting recovery in strict product liability absent "physical harm to person or property." *Jimenez v. Superior Court*, 29 Cal. 4th 473, 482 (2002). Nor do they assert that their claims fit under the narrow exceptions in *Erlich v. Menezes*, 21 Cal. 4th 543 (1999), allowing recovery where "the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object" or where the breach of a duty that "threaten[s] physical injury" proximately causes emotional distress. *Id.* at 555–56.

Plaintiffs instead direct the Court to an entirely irrelevant ruling that does not concern any of the product-liability claims alleged in the FAC. *See* Opp. 13 (citing *In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 895 (N.D. Cal. 2024)). This decision does not help them at all, because the language they cite describing emotional harm as "substantial" has nothing to do with whether such harm constitutes a physical injury, and instead appears in a discussion of the Federal Trade Commission Act, which—unlike products-liability law—is focused on redressing *monetary* harm. 753 F. Supp. at 895. Plaintiffs' reliance on dicta in *Hughes v. Apple, Inc.*, 723 F. Supp. 3d 693 (N.D. Cal. 2024), is similarly unpersuasive. There, Judge Chhabria questioned, without deciding, whether state law would "categorically bar product liability recovery for pure emotional distress injury." *Id.* at 710 n.7. But the defendant there failed to cite any cases addressing the standard for emotional distress. *Id.* at 710 (noting "[i]f there is some other doctrine that precludes the vindication of an emotional injury in a products liability case, [defendant] hasn't cited it"). Indeed, the briefing in *Hughes*

-8-

failed to cite *Erlich* and *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 (1993), so Judge Chhabria had no opportunity to consider this highly relevant precedent on the availability of emotional damages. *See* Reply Br., Dkt. No. 57, *Hughes*, 723 F. Supp. 3d 693; *see also Bogard v. TikTok Inc.*, No. 24-cv-03131, 2025 WL 604972, at *8 (N.D. Cal. Feb. 24, 2025) (ignoring relevant precedent on emotional damages, as in *Hughes*). Here, by contrast, Google's Motion cited both of these cases, which establish that emotional damages are not recoverable under products-liability law.

Plaintiffs also seek to salvage their claims by arguing that they separately allege economic injury. Opp. 14. But under the economic loss rule, purely economic injuries are not compensable in the absence of "physical harm to person or property." *Jimenez*, 29 Cal. 4th at 482. And for the reasons discussed in Google's Motion, allegations concerning addiction itself or the effect of emotional injury on the brain are inadequate to show physical injury. *See* Mot. 14. Finally, unlike the plaintiffs in *Ziencik v. Snap, Inc.*, No. CV 21-7292, 2023 WL 2638314 (C.D. Cal. Feb. 3, 2023), Plaintiffs do not allege that M.C. lost "general health, strength and vitality." *Id.* at *4.

**2.      Product-liability claims cannot arise from exposure to content or ideas.**

Plaintiffs also fail to explain why their claims should not be dismissed based on alleged exposure to harmful ideas and expression, i.e., pornography. Plaintiffs attack arguments never made in Google's Motion (Opp. at 14, 15), but never even attempt to distinguish *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9th Cir. 1991), a case that squarely forecloses their claims.

In *Winter*, the Ninth Circuit considered a reference book that allegedly contained dangerously inaccurate information about identifying edible mushrooms, which caused plaintiffs physical harm when they foraged in error. *Id.* at 1034. Even though the ideas and expressions in the book rendered its text unquestionably dangerous, the court held that such harms are not redressable under product-liability law because imposing strict liability "could seriously inhibit those who wish to share thoughts and theories." *Id.* at 1035. Here, as in *Winter*, Plaintiffs seek to hold Google strictly liable because its Products allegedly expose users to "harmful content" and "harmful communications." FAC ¶ 7; *see also, e.g., id.* ¶¶ 11, 51–52, 69. Indeed, Plaintiffs rest their design defect claim on their allegation that Google's Products "create an inherent risk of

danger to students: specifically, promotion of and access to harmful online content and communications[.]" *Id.* ¶ 312. Their claims thus arise not from alleged defects in a "tangible container of those ideas," but rather from "their communicative content." *James v. Meow Media, Inc.*, 300 F.3d 683, 701 (6th Cir. 2002). As such, they are not redressable under products liability law, and Counts 1 through 5 should be dismissed for this reason, too.

**D.      The Parent Plaintiffs fail to state a Fourteenth Amendment claim.**

      **1.      Google is not a state actor.**

Plaintiffs fail to establish state action by Google under any applicable test.

**Public Function Test**: As every court to consider the issue has found, providing hardware and software for educational use is not a function traditionally and exclusively performed by the government. *See, e.g.*, *Q.J. v. PowerSchool Holdings, LLC*, No. 23 C 5689, 2025 WL 2410472, at *8 (N.D. Ill. Aug. 20, 2025); *Hernandez-Silva v. Instructure, Inc.,* No. 2:25-cv-02711, 2025 WL 2233210, at *4 (C.D. Cal. Aug. 4, 2025). Plaintiffs make no effort to distinguish these cases, and simply ignore the exclusivity requirement altogether. *See* Opp. 15–16; *Tovar v. City of San Jose*, No. 5:21-CV-02497, 2021 WL 6126931, at *2 (N.D. Cal. Dec. 28, 2021) (failing to respond is concession). Further, Plaintiffs' citation to *Peltier v. Charter Day School, Inc.*, 37 F.4th 104, 120 (4th Cir. 2022), cannot overcome binding Ninth Circuit precedent holding that "provi[ding] educational services is not a function that is traditionally and exclusively the prerogative of the state." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 816 (9th Cir. 2010). Regardless, *Peltier* is inapposite. Google is not a charter school deciding "educational philosophy." 37 F.4th at 120. Google merely supplied hardware and software to schools.

**Joint Action/Entwinement Test**: The joint action and entwinement tests ask whether there was "a high degree of cooperation between private parties and state officials" as to the alleged misconduct. *O'Handley v. Weber*, 62 F.4th 1145, 1159–60 (9th Cir. 2023). Here, the alleged misconduct is the design of Google's Products. FAC ¶ 286. Plaintiffs' concession that the government was not involved in that design process is fatal. *See O'Handley,* 62 F.4th at 1159–60 (considering whether the government was involved in challenged decision); *Brannum v. Overton Cnty. Sch. Bd.*, No. 2:03-0065, 2006 WL 8445313, at *10 (M.D. Tenn. June 20, 2006) (same).

-10-

**FERPA**: Google's potential status as a "school official" in some contexts is not enough. "*Caviness* was clear that statutory labels are not necessarily dispositive with respect to all of a private entity's conduct." *Hernandez-Silva*, 2025 WL 2233210, at *4 (cleaned up). The applicable tests instead ask whether providing hardware and software to schools is a traditionally and exclusively governmental function and whether the government was involved in the challenged design decisions. Neither test is satisfied here. Plaintiffs thus fail to show state action by Google.

**2.    The Plaintiff Parents have not shown a Fourteenth Amendment violation.**

Plaintiffs do not and cannot identify a single case suggesting that parents have a Fourteenth Amendment right to insist that schools use technology with highly specific safety features instead of using the internet-enabled hardware and software used by "nearly 60 percent of all K-12 schools." FAC ¶ 259 n.37. Further, the Ninth Circuit has repeatedly held that parents "do not have a due process right to interfere with . . . curriculum, discipline, hours of instruction, or the nature of any other curricular or extracurricular activities." *Cal. Parents for the Equalization of Educ. Materials v. Torlakson,* 973 F.3d 1010, 1020 (9th Cir. 2020). Just as schools have the right to make decisions about sexual education, *Fields v. Palmdale Sch. Dist. (PSD)*, 447 F.3d 1187, 1190–91 (9th Cir. 2006), and inclusionary bathroom policies, *Parents for Priv. v. Barr*, 949 F.3d 1210, 1232 (9th Cir. 2020), they may choose to use Google's Products.

**3.    The Plaintiff Parents' Constitutional claim is time-barred.**

The two-year statute of limitation for Section 1983 claims accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015). Any claims against Google accrued with M.C.'s addiction to pornography, which the Plaintiff Parents indisputably knew of by at least 2022. *See* Opp. 20; Mot. 19; *see also Cal. Sansome Co. v. U.S. Gypsum,* 55 F.3d 1402, 1407 (9th Cir. 1995) (recognizing dismissal would be proper if the complaint "admitted or necessarily implied" that injury was time-barred). This ends the inquiry. And contrary to Plaintiffs' suggestion, the Court need not separately consider the timing of any alleged "wrongdoing," Opp. 20–21, which would necessarily have happened before the harm in any event. Dismissal is proper for this reason, too.

**E.    Plaintiffs' UCL claim fails.**

**1.    Plaintiffs are not entitled to equitable UCL relief.**

Plaintiffs do not show entitlement to equitable relief available under the UCL. As to injunctive relief, Plaintiffs' Opposition initially confuses mootness with standing, Opp. 21, but ultimately confirms that Plaintiffs are unlikely to be harmed in the same way again. M.C. is already enrolled at a different school where he is "protect[ed]" from Google's Products. FAC ¶ 211. That readily distinguishes this case from *K.J. by & through Johnson v. Jackson*, 127 F.4th 1239 (9th Cir. 2025), where the plaintiff sought an order "allowing him to return to school," *id.* at 1253. Here, Plaintiffs fail to identify *any specific* injunctive relief that they would seek, much less explain how that relief is tied to an ongoing injury. *See also Phillips v. Apple Inc.*, 725 F. App'x 496, 498 (9th Cir. 2018) (no standing for injunction where feature had been "disabled").

As to restitution, Plaintiffs claim that they should be reimbursed for money paid to third parties to protect and treat M.C. FAC ¶ 212. But restitution is unavailable "[a]bsent any allegation that [the defendant] directly or indirectly received the money plaintiffs paid [to third parties]," an allegation that is wholly absent here. *Phillips*, 725 F. App'x at 498–99 (collecting cases).

Finally, Plaintiffs make no attempt to explain *why* the legal remedies *they* seek are inadequate. Mot. 20. Plaintiffs cannot punt the adequate remedies issue as "fact-intensive." Opp. 22. They owe the Court and Google an explanation for their decision to seek both legal and equitable remedies for the same harm, and that explanation must be given now.

**2.    Plaintiffs fail to state a viable UCL claim.**

Plaintiffs do not dispute that their UCL claims fail if, as here, their other claims are subject to dismissal. Opp. 23.

Separately, with respect to their "unlawful" claim, Plaintiffs do not meaningfully respond to case law establishing that plaintiffs cannot vaguely point to their other claims as predicates. Opp. 22; Mot. 20. And while Plaintiffs contend that their common law claims may serve as predicates, they cite only cases involving insurance claims. Opp. 22. None of these cases discusses, let alone decides, whether negligence or product-liability claims can serve as

predicates, which they cannot. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1043-44 (9th Cir. 2010) (finding alleged "common law violation . . . insufficient" as predicate).

As to their "unfair" claim, Plaintiffs do not dispute that it rests on the same "business practices" as their unlawful claim, which is fatal under *GMC Semitech Co. v. Cap. Asset Exch. and Trading, LLC*, No. 24-cv-09451, 2025 WL 1236677, at *5 (N.D. Cal. Apr. 29, 2025). *See* Opp. 23; FAC ¶¶ 454, 455. Plaintiffs rely on conclusions of law to support their unfair claim. Opp. 23. And it is wholly conclusory to simply assert that the harms of Google's Products outweigh their benefits without offering any *explanation* addressing the benefits. *See, e.g.*, FAC ¶¶ 17, 47 (acknowledging benefits), ¶¶ 222-67 (reciting various, often speculative harms).

Plaintiffs' UCL claim should be dismissed.

**F.      Plaintiffs' implied warranty claims fail.**

**1.      Plaintiffs cannot escape the privity requirement as third-party beneficiaries.**

Plaintiffs assert that they are third-party beneficiaries of Google's Products, Opp. 25, but that does not allow them to pursue implied warranty claims against Google. The Ninth Circuit has clearly held that, unless a "particularized exception[]" exists, "a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). No published California state court case has recognized a privity exception for end users of consumer products, and numerous district courts have dismissed claims relying on such a purported exception. *See, e.g.*, *Valentine v. Crocs, Inc.*, 783 F. Supp. 3d 1204, 1214 (N.D. Cal. 2025); *Smith v. Intel Corp.*, 745 F. Supp. 3d 853, 867 (N.D. Cal. 2024). The district courts to come out the other way, such as *Hawkins v. Shimano N. Am. Bicycle Inc.*, 729 F. Supp. 3d 989, 1026 (C.D. Cal. 2024), violate the Ninth Circuit's instruction that "a federal court sitting in diversity is not free to create new exceptions." *Clemens*, 534 F.3d at 1023–24. "It is difficult to imagine a more thorough nullification of the rule stated in *Clemens*," which dismissed the claims of a driver who bought a defective car from someone besides the manufacturer, "than to hold that consumers, simply by virtue of their status as end users of a product, are implied beneficiaries of distribution contracts between manufacturers and

retailers, and thus entitled to bring implied warranty claims." *Watkins v. MGA Ent., Inc.*, 574 F. Supp. 3d 747, 755 (N.D. Cal. 2021) (citation omitted).

Regardless, even if the exception existed, Plaintiffs bear the burden to "plead a contract which was made expressly for [their] benefit and one in which it clearly appears that [they were] a beneficiary." *In re NVIDIA GPU Litig.*, No. C 08-04312, 2009 WL 4020104, at *6 (N.D. Cal. Nov. 19, 2009) (internal citations omitted); *In re Google Phone Litig.*, No. 10-CV-01177, 2012 WL 3155571, at *9 (N.D. Cal. Aug. 2, 2012) (dismissing implied warranty claim where plaintiff failed to identify a specific contract for which it was a third-party beneficiary). Plaintiffs refuse to identify any such contract. Instead, Plaintiffs fight tooth and nail to keep the Court from even looking at the only contractual documents mentioned in their complaint—Google's Terms of Use and GWFE's Terms of Use. *See* Google RJN (collecting citations); RJN Opp. (disputing reliance and seeking to stop any consideration of Google's terms of use). Their reason for doing so is obvious given the terms' disclaimers. *See infra* 14–15. But even if Plaintiffs succeed in avoiding those terms, their implied warranty claim fails for the above reasons.

**2.    Plaintiffs cannot overcome Google's waivers of implied warranty.**

Plaintiffs' implied warranty claims also fail because the Google and GWFE terms plainly bar those claims. Plaintiffs make no arguments "address[ing] the plain language of [Google's] warranty explicitly disclaiming all implied warranties." *Crown Cell Inc. v. Ecovacs Robotics Inc.*, No. 21-CV-07890, 2022 WL 4087512, at *7 (N.D. Cal. Sept. 6, 2022). And while Plaintiffs object that Google relies on its current terms, similar language appears in prior versions. *See* Declaration of Anna Thompson, Exs. E–G (attaching available historical versions of the terms).

Finally, Plaintiffs' claim of unconscionability is wholly conclusory. *See Park-Kim v. Daikin Indus., Ltd*, No. 2:15-cv-09523, 2016 WL 5958251, at *17 (C.D. Cal. Aug. 3, 2016) (recognizing plaintiffs' burden to plead unconscionability); *In re Google Phone Litig.*, 2012 WL 3155571, at *7 (rejecting conclusory assertion that implied warranty disclaimer was unconscionable). They have not identified any parts of Google's disclaimers that "create overly harsh or one-sided results as to shock the conscience." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1027–28 (N.D. Cal. 2020) (rejecting assertion that basic implied warranty disclaimer was

substantively unconscionable) (internal citations omitted). And the one case they cite is easily distinguishable because the plaintiffs were parties to the challenged contract and alleged facts to support their assertion that they were "surprised" by the implied warranty waiver and that the agreement "deprived one of the contracting parties of meaningful choice." *Teknekron Customer Info. Sols., Inc. v. Watkins Motor Lines, Inc.*, No. C-93-03422, 1994 WL 11726, at *5 (N.D. Cal. Jan. 5, 1994). Again, Plaintiffs are not party to any contract, and they are wholly conclusory in their assertion of unconscionability.

### 3.    Plaintiffs' injuries cannot form the basis for an implied warranty claim.

Plaintiffs do not dispute that emotional harm cannot form the basis for their implied warranty claim, conceding the point. *See* Opp. 25. And while Plaintiffs make the conclusory assertion that they alleged "more than emotional harm," *id.*, the injuries they point to still sound in "mental suffering" and "emotional distress." *Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal. App. 4th 174, 188–90 (1994); *see supra* 8–9.

Regardless, even if they did not sound in "mental suffering and emotional distress," the harms described in the FAC—all stemming from M.C.'s addiction to pornography—are not the sort of damages "within the contemplation of the parties [i.e., Google and M.C.'s school] when the contract was entered into or at least reasonably foreseeable by them at the time." *Erlich*, 21 Cal. 4th at 558. These damages are instead "beyond the expectations of the parties and not recoverable," *id.*, as made clear by the fact that the opposition fails to identify a single, remotely analogous implied warranty case. This, too, defeats Plaintiffs' claim.

### III.    CONCLUSION

For the above reasons and those in its Motion, Google respectfully asks the Court to dismiss the FAC.

Dated:  March 6, 2026

**PERKINS COIE LLP**

By: */s/ Sunita Bali*
    Sunita Bali (Bar No. 274108)
    Lauren J. Tsuji (Bar No. 300155)
    Anna Mouw Thompson (*pro hac vice*)

*Attorneys for Defendant GOOGLE LLC*

3:25-CV-08927-AMO
REPLY IN SUPPORT OF GOOGLE'S MOTION TO DISMISS